# No. 24-11946

## In the United States Court of Appeals
## For the Eleventh Circuit

_____

ADAM MCLEAN, an individual,
JAMES DOYLE, an individual,
on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

versus

DELTA AIR LINES, INC.,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court for the
Northern District of Georgia, No. 1:17-cv-00541-ELR

_____

## OPENING BRIEF OF PLAINTIFFS-APPELLANTS

_____

GENE J. STONEBARGER
California Bar No. 209461
Stonebarger Law, APC
101 Parkshore Dr., Ste. 100
Folsom, California 95630
(916) 235-7140

CHARLES M. BILLY
California Bar No. 247046
Law Offices of Charles M. Billy, APC
22706 Aspan St., Ste. 305
Lake Forest, California 92630
(949) 357-9636

STEPHEN J. ANDERSON
Georgia Bar No. 018325
Kenneth S. Nugent, P.C.
4227 Pleasant Hill Road, Building 11
Duluth, Georgia 30096
(770) 820-0823

July 22, 2024

*McLean, et al v. Delta Air Lines, Inc.*
*No. 24-11946*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1, Adam McLean and James Doyle, hereby certify that the following is a complete list of the trial judge and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case on appeal:

- Anderson, Stephen J., counsel for Appellants Adam McLean and James Doyle (counsel for Plaintiffs Adam McLean and James Doyle below)

- Basking, Hannah L., (counsel for Defendant below)

- Billy, Charles M., counsel for Appellants Adam McLean and James Doyle (counsel for Plaintiffs Adam McLean and James Doyle below)

- Bisbee, Lincoln O., counsel for Appellee (counsel for Defendant below)

- Coomes, A. Joseph (withdrawn counsel for Plaintiffs Jeremy Sorenson, Randal Reep, Randal Smith, and Adam McLean below)

- Covey, A. Cyclone (counsel for Plaintiffs Jeremy Sorenson and Randal Reep below)

- Delta Air Lines, Inc., a Delaware Corporation (NYSE: DAL), Appellee (Defendant below). Delta Air Lines, Inc. certified that Delta Air Lines, Inc. has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

*McLean, et al v. Delta Air Lines, Inc.*
*No. 24-11946*

- DiBella, Bianca N., (counsel for Defendant below)

- Doyle, James, Appellant (Plaintiff below)

- Kenneally, Michael E., counsel for Appellee

- Kenneth S. Nugent, P.C., counsel for Appellants Adam McLean and James Doyle (counsel for Plaintiffs Adam McLean and James Doyle below)

- Kneupper & Covey PC (counsel for Plaintiffs Jeremy Sorenson and Randal Reep below)

- Law Office of A. Joseph Coomes, LLC (withdrawn counsel for Plaintiffs Jeremy Sorenson, Randal Reep, Randal Smith, and Adam McLean below)

- Lawler, Brian J. (withdrawn counsel for Plaintiffs James Doyle, Adam McLean, Randal Reep, Randal Smith, and Jeremy Sorenson below)

- Matter Law, APC (counsel for Plaintiffs Jeremy Sorenson and Randal Reep below)

- Matter, Crystal L. (counsel for Plaintiffs Jeremy Sorenson and Randal Reep below)

- McLean, Adam, Appellant (Plaintiff below)

- Morgan, Lewis & Bockius LLP, counsel for Appellee (counsel for Defendant below)

- Munger & Stone, LLP, counsel for Appellee (counsel for Defendant below)

- Munger, Thomas J., (withdrawn/deceased counsel for Defendant below)

*McLean, et al v. Delta Air Lines, Inc.*
*No. 24-11946*

- Pilot Law, P.C. (withdrawn counsel for Plaintiffs James Doyle, Adam McLean, Randal Reep, Randal Smith, and Jeremy Sorenson below)

- Ranjo, Joseph J. (counsel for Defendant below)

- Reep, Randal (Plaintiff below)

- Robinson, Blair J. (withdrawn counsel for Defendant below)

- Rosenstein, Ira G. (counsel for Defendant below)

- Ross, Eleanor L. (United States District Judge below)

- Smith, Randal (Plaintiff below)

- Sorenson, Jeremy (Plaintiff below)

- Stone, Benjamin A. (withdrawn counsel for Defendant below)

- Stonebarger Law, APC, counsel for Appellants Adam McLean and James Doyle (counsel for Plaintiffs Adam McLean and James Doyle below)

- Stonebarger, Gene J., counsel for Appellants Adam McLean and James Doyle (counsel for Plaintiffs Adam McLean and James Doyle below)

- The Law Offices of Charles M. Billy, P.C., counsel for Appellants Adam McLean and James Doyle (counsel for Plaintiffs Adam McLean and James Doyle below)

- Troutman Pepper Hamilton Sanders LLP, (counsel for Defendant below)

- Washburn, James A., (counsel for Defendant below)

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs request oral argument under 11th Cir. R. 28-1(c). This action was brought as a putative Class Action and is a matter of public concern affecting a large number of persons. This action requires interpretation of the Uniformed Services Employment and Reemployment Rights act of 1994 ("USERRA"). USERRA is an important federal statue protecting employment rights of military reservists who "play a vital role in our nation's defense policy." *Myrick v. City of Hoover*, 69 F.4th 1309, 1312 (11th Cir., June 8, 2023).

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ...................................... C1

STATEMENT REGARDING ORAL ARGUMENT ............................................ i

TABLE OF AUTHORITIES ..................................................................... v

JURISDICTIONAL STATEMENT ............................................................ 1

STATEMENT OF THE ISSUES ............................................................... 1

STATEMENT OF THE CASE .................................................................. 3

I.     Nature of The Case ..................................................................... 3

    A.     § 4311 (Prohibition on Discrimination) ................................. 5

    B.     § 4316(a) (Seniority Benefits) and § 4318(b)(3) (Pension Benefits) ................................................................................... 7

    C.     § 4316(b) (Non-Seniority Based Benefits) ............................. 8

II.    Procedural Background ............................................................... 9

III.   The Summary Judgment Order .................................................. 11

    A.     Order Regarding Plaintiff McLean's Discrimination Claims ............ 12

    B.     Order Regarding Plaintiff Doyle's Discrimination Claims ................ 13

    C.     Order Regarding Pension Contributions for Military Pilots .............. 14

    D.     Order Regarding Vacation Time Accrual Policy for Military Pilots ................................................................................... 15

IV.    Statement of Facts ...................................................................... 16

    A.     Delta's Concurrent Duty Policy ............................................ 17

    B.     Delta's Pension Contribution Practices for Military Pilots ................ 20

    C.     Delta's Vacation Time Accrual Policy for Military Pilots ................ 23

V.     Standard of Review .................................................................... 23

SUMMARY OF ARGUMENT ................................................................. 24

I.      Discrimination Cause of Action ...................................................24

II.     Pension Contribution Cause of Action ........................................25

III.    Vacation Time Accrual Cause of Action......................................25

ARGUMENT .........................................................................................25

I.      The District Court Committed Reversible Error By Not Determining
        That The Concurrent Duty Policy Was Itself Discriminatory And
        Cannot Be Used As A Legitimate Basis To Justify Adverse Action ............25

        A.      Plaintiff McLean's Military Status was a Motivating Factor in
                his Termination......................................................................33

        B.      Plaintiff Doyle's Military Status was a Motivating Factor in
                his Termination......................................................................35

        C.      The District Court Erred When It Denied Plaintiffs' Motion
                for Reconsideration Based Upon Newly Discovered Evidence
                Material To Count 2 Of Moving Plaintiffs' Discrimination
                Cause Of Action Alleging The Illegality of Delta's
                Discriminatory Concurrent Duty Policy ...............................39

II.     The District Court Committed Reversible Error When It Failed To
        Take Into Account Evidence Provided by Plaintiffs When It
        Determined That Pilot Pay Was Not "Reasonably Certain" In
        Calculating Pension Contributions .................................................42

III.    The District Court Committed Reversible Error by Failing to Allow
        A Jury Determine What Leaves Are Comparable to MLOA Relating
        to Their Vacation Accrual Claim....................................................47

        A.      Plaintiffs' Argument Comparing MLOA with SCML Is Not a
                New Claim..............................................................................47

        B.      A Jury Must be Allowed to Determine the Factual Issue of
                Whether MLOA is Comparable to Other Forms of Leave ................48

                1.      Comparability................................................................49

                2.      Duration........................................................................50

                3.      Purpose..........................................................................50

                4.      Ability to Choose ..........................................................50

        C.      SCML is Comparable to MLOA.........................................51

iii

     D.     KLOA is Comparable to MLOA ........................................................... 53

CONCLUSION ............................................................................................................... 55

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................24

*Annarumma v. City of High Springs Florida*,
    846 F. App'x 776 (11th Cir. 2021)........................................28, 29

*Boone v. Lightner*,
    319 U.S. 561 (1943)....................................................................4

*Bostock v. Clayton Cty.*,
    140 S. Ct. 1731 (June 15, 2020) ..........................................27, 28

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014) ..................................................46

*Clarkson v. Alaska Airlines, Inc.*,
    59 F.4th 424 (9th Cir., Feb. 1, 2023)....................3, 4, 5, 8, 46, 48,
                               49, 50, 51, 53

*Coffman v. Chugach Support Servs., Inc.*,
    411 F.3d 1231 (11th Cir. 2005) ............................................28, 29

*Combs v. Plantation Patterns*,
    106 F.3d 1519 (11th Cir. 1997) ..................................................30

*Drake v. Tucson, Inc.*,
    1010 WL 148212 (D. Ariz. Jan 12, 2010) ..................................26

*Fishgold v. Sullivan Drydock & Repair Corp.*,
    328 U.S. 275 (1946)....................................................................4

*Gambrill v. Cullman County Bd. of Educ.*,
    395 F. App'x 543 (11th Cir., Aug. 21, 2010) ...............................7

*Herrera v. City of Hialeah*,
    2023 U.S. App. LEXIS 1114 (11th Cir., Jan 18, 2023) .........5, 6, 7

*Howard v. BP Oil Co.*,
    32 F.3d 520 (11th Cir. 1994) ......................................................30

*Howell v. Wexford Health Sources, Inc.*,
    987 F.3d 647 (7th Cir. 2021) ......................................................49

*Jackson v. State of Ala. Tenure Comm'n*,
  405 F.3d 1276 (11th Cir. 2005) ....................................................29

*Jersawitz v. People TV*,
  71 F. Supp. 2d 1330 (N.D. Ga. 1999)............................................39

*Monroe v. Standard Oil Co.*,
  452 U.S. 549 (1981)...............................................................5, 37

*Myrick v. City of Hoover*,
  69 F.4th 1309 (11th Cir., June 8, 2023)..................................3, 4, 49

*Paper Recycling, Inc. v. Amoco Oil Co.*,
  856 F. Supp. 671 (N.D. Ga. 1993)................................................39

*Rogers v. City of San Antonio*,
  392 F.3d 758 (5th Cir. 2004) .......................................................48

*Rozumalski v. W.F. Baird & Assocs., Ltd.*,
  937 F.3d 919 (7th Cir. 2019) ...................................................9, 49

*Scanlan v. Am. Airlines Grp., Inc.*,
  102 F.4th 164, 170 (3rd Cir., May 21, 2024) ...................................9

*Smith v. Berryhill*,
  139 S. Ct. 1765 (2019).................................................................48

*Smith v. Lockheed-Martin Corp.*,
  644 F.3d 1321 (11th Cir. 2011) ....................................................24

*Sorenson v. Delta Air Lines*,
  2018 U.S. Dist. LEXIS 244076 (N.D. Ga. 2018)......................4, 17

*St. Mary's Honor Crt. v. Hicks*,
  509 U.S. 502 (1993)......................................................................30

*Staub v. Proctor Hosp.*,
  562 U.S. 411 (2011)...............................................................5, 6, 7

*Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*,
  143 S. Ct. 2141 (June 29, 2023) ....................................................5

*Syufy Enters. v. Am. Multicinema, Inc.*,
  793 F.2d 990 (9th Cir. 1986) ........................................................49

*Tex. Dep't of Cmty. Affairs v. Burdine*,
  450 U.S. 248 (1981)......................................................................29

*Thomas v. Broward Cnty. Sheriff's Office*,
71 F.4th 1305 (11th Cir., June 22, 2023)..............................................6, 34, 36

*Travers v. Fed. Express Corp.*,
8 F.4th 198 (3d Cir., Aug. 10, 2021) ................................................3, 4, 48, 49

*Tully v. Department of Justice*,
481 F.3d 1367 (Fed. Cir. 2007) ....................................................................48

*Waltermyer v. Aluminum Co. of America*,
804 F.2d 821 (3d Cir. 1986) .........................................................................48

*White v. United Airlines, Inc.*,
987 F.3d 616 (7th Cir. 2021) ..................................................................50, 54

*Yelling v. St. Vincent's Health Sys.*,
82 F.4th 1329, 1311 (11th Cir., Oct. 5, 2023) ..................................23, 24, 28

**Statutes & Other Authorities:**

11th Cir. R. 28-5 ..........................................................................................19

20 C.F.R. § 1001.150(a)..........................................................................51, 52

20 C.F.R. § 1001.150(b) ...............................................................................52

20 C.F.R. § 1002 ...........................................................................................21

20 C.F.R. § 1002.85(a)..........................................................................26, 31, 38

20 C.F.R. § 1002.85(c)...................................................................................31

20 C.F.R. § 1002.85(d) .............................................................................26, 31

20 C.F.R. § 1002.104 .....................................................................................37

20 C.F.R. § 1002.150 .......................................................................................8

20 C.F.R. § 1002.150(b) ................................................................................48

20 C.F.R. § 1002.210 .......................................................................................8

20 C.F.R. § 1002.259(a)..................................................................................43

20 C.F.R. § 1002.261 .......................................................................................8

28 U.S.C. § 1331 ..............................................................................................1

32 C.F.R. § 104.6(a)(2)(A) .............................................................................31

38 U.S.C. § 4301 ...................................................................4

38 U.S.C. § 4301(a) .........................................................3, 37

38 U.S.C. § 4301(a)(1) ..........................................................3

38 U.S.C. § 4303 .................................................................10

38 U.S.C. § 4311 ...............................................3, 5, 10, 27, 37

38 U.S.C. § 4311(a) ..............................................................5

38 U.S.C. § 4311(c)(1) ......................................................6, 27

38 U.S.C. § 4312 ........................................................10, 26, 38

38 U.S.C. § 4316 .................................................................10

38 U.S.C. § 4316(a) .............................................................3, 7

38 U.S.C. § 4316(b) ....................... 3, 8, 12, 26, 38, 48, 50, 51, 52

38 U.S.C. § 4316(b)(1) ......................................................8, 50

38 U.S.C. § 4316(b)(1)(B) ........................................8, 12, 48, 51, 52

38 U.S.C. § 4318 ............................................................10, 42

38 U.S.C. § 4318(b)(1) ...........................................................8

38 U.S.C. § 4318(b)(3)........................................3, 7, 8, 42, 43

38 U.S.C. § 4323(b)(3)............................................................1

42 U.S.C. § 2000e-2(a) ....................................................5, 27, 28

Fed. R. App. P. 4.....................................................................1

Fed. R. Civ. P. 56(a)............................................................24

Fed. R. Civ. P. 58 ..................................................................1

Fed. R. Ev. 407......................................................................40

Fed. R. Ev. 1006....................................................................22

L.R. 56.1(B)(2)(a)(2) ............................................................54

*Discriminate*, Webster's Third New International Dictionary (1961) .................5, 6

## JURISDICTIONAL STATEMENT

The Court has original subject matter jurisdiction founded on federal question jurisdiction, 28 U.S.C. §1331, as conferred by 38 U.S.C. §4323(b)(3). Plaintiffs-Appellants Adam McLean and James Doyle, individually and on behalf of all others similarly situated ("Plaintiffs" or the "Military Pilots"), timely filed their Notice of Appeal on June 11, 2024 [Doc. 270], pursuant to Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure, with the United States Court of Appeals for the Eleventh Circuit from the District Court's FRCP 58 Final Judgment as to all of Plaintiffs' claims contained in the Second Amended Complaint ("SAC") against Defendant-Appellee Delta Air Lines, Inc. ("Defendant," "Delta" or "Employer"), entered in the above-captioned action on September 8, 2023[Doc. 251], which became final on May 30, 2024 when the only remaining pending claim in the case was dismissed by the District Court, and no claims remained pending before the District Court [Doc. 269].

## STATEMENT OF THE ISSUES

I.    Did the District Court err in not determining that Delta's Concurrent Duty Policy was discriminatory and thus unlawful under USERRA?

II.   Did the District Court err when it determined that Plaintiffs' violations of Delta's Councurrent Duty Policy could be used by Delta as a standalone legitimate reason to take adverse action against Plaintiffs?

**III.** Did the District Court err when it denied Plaintiffs' Motion for Reconsideration based upon newly discovered evidence material to the Court's findings regarding Plaintiffs' Discrimination Cause of Action alleging the illegality of Delta's discriminatory Concurrent Duty Policy?

**IV.** Did the District Court err by not allowing a jury to weigh the evidence and determine if pilot earnings at Delta are "reasonably certain"?

**V.** Did the District Court err by holding that Plaintiffs' argument comparing military leave of absence ("MLOA") with Special Conflict Military Leave ("SCML") was a new claim not included in the SAC and raised for the first time in Opposition to the Motion for Summary Judgment?

**VI.** Did the Distrcit Court err by not allowing a jury to determine if other forms of leave, such as SCML and Known Leave of Absence ("KLOA"), are comparable to military leave?

## STATEMENT OF THE CASE

### I.    Nature of The Case

"Military reservists play a vital role in our nation's defense policy." *Myrick v. City of Hoover*, 69 F.4th 1309, 1312 (11th Cir., June 8, 2023). "When called to service, these men and women are expected to leave their civilian jobs, sometimes for years on end." *Id*. To alleviate this burden, Congress enacted USERRA. *Id.* (citing 38 U.S.C. § 4301(a)). "In short, USERRA recognizes that those who serve in the military should be supported, rather than penalized, for their service." *Clarkson v. Alaska Airlines, Inc.,* 59 F.4th 424, 429 (9th Cir., Feb. 1, 2023). USERRA enables servicemembers to strike a balance between fulfilling their military duties and civilian obligations, including civilian jobs, without suffering discrimination. *Id.* (citing *Travers v. Fed. Express Corp.*, 8 F.4th 198, 199 (3rd Cir., Aug. 10, 2021)).

"USERRA is the latest in a long line of laws that protect employees who serve in the military." *Id.* at 1314. "Congress enacted USERRA to mitigate the employment disadvantages that stem from non-career military service." *Id.* (citing 38 U.S.C. §4301(a)(1)). "In pursuit of this purpose, Congress imposed a number of obligations on employers and granted a number of entitlements to military employees." *Id.* This Appeal is about the obligations and entitlements in §4311 (Prohibition on Discrimination), §4316(a) (Seniority Based Benefits), §4316(b) (Non-Seniority Based Benefits) and §4318(b)(3) (Pension Benefits).

"The Supreme Court has long admonished courts to construe statutes protecting veterans liberally for the benefit of the veteran." *Myrick*, 69 F.4th at 1318 (citing *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946)). "Congress adopted this rule of construction when it enacted USERRA." *Id.* (citing *Clarkson*, 59 F.4th at 429.) "Thus, when two plausible interpretations of USERRA exist—one denying benefits, the other protecting the veteran—we must choose the interpretation that protects the veteran." *Id.* (citing *Travers*, 8 F.4th at 208 n.25 ("[A]ny interpretive doubt is construed in favor of the service member, under the pro-veteran canon."); see also *Boone v. Lightner*, 319 U.S. 561, 575 (1943)("always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation.")

As the District Court previously recognized in its 2018 Order Denying Delta's Motion to Dismiss, Congress enacted USERRA:

> (1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service; (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and (3) to prohibit discrimination against persons because of their service in the uniformed services.

38 U.S.C. §4301; *Sorenson v. Delta Air Lines*, 2018 U.S. Dist. LEXIS 244076, *12-13 (N.D. Ga. 2018).

"Congress intended USERRA and its predecessor statutes to protect reservists during their 'frequent absences from work' with the full understanding that those frequent absences could 'cause considerable inconvenience to an employer.'" *Clarkson*, 59 F.4th at 436 (citing *Monroe v. Standard Oil Co*., 452 U.S. 549. 555 (1981)). "Nevertheless, Congress has provided that employers may not rid themselves of such inconveniences and productivity losses by discharging or otherwise disadvantaging employee-reservists solely because of their military obligations." *Id.*

### A.    § 4311 (Prohibition on Discrimination)

USERRA affords broad protections against discrimination, providing that service members "shall not be denied … any benefit of employment by an employer on the basis of that membership." 38 U.S.C. §4311(a).

The USERRA statute is very similar to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-2(a). *Herrera v. City of Hialeah*, 2023 U.S. App. LEXIS 1114, *7 (11th Cir., Jan 18, 2023)(citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 417, (2011)). "To 'discriminate' against a person meant in 1964 what it means today: to 'trea[t] that individual worse than others who are similarly situated.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 143 S. Ct. 2141, 2208 (June 29, 2023)(citing Webster's Third New International

5

Dictionary 648 (1961)("to make a difference in treatment or favor on a class or categorical basis").

"An employee proves a violation [of USERRA] by establishing that his 'service . . . in the uniformed services [was] a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such . . . service.'" *Thomas v. Broward Cnty. Sheriff's Office*, 71 F.4th 1305, 1312 (11th Cir., June 22, 2023)(citing §4311(c)(1)). "A person's military service is a motivating factor if 'it is one of the factors that a truthful employer would list if asked for the reasons for its decision." *Id.* "A wide range of evidence may prove that an employee's military status was a motivating factor in his termination, including 'an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity' and 'inconsistencies between the proffered reason and other actions of the employer.'" *Id.* (internal citations omitted).

"The Supreme Court has held that an employer may be held liable for employment discrimination based on the discriminatory animus of an employee who influenced, but did not make, the ultimate employment decision." *Herrera v. City of Hialeah*, 2023 U.S. App. LEXIS 1114, *8 (citing *Staub*, 562 U.S. at 417-23). "In *Staub*, the Supreme Court ruled that a plaintiff may assert a 'cat's paw' claim under USERRA by showing that (1) a supervisor performed an act motivated

6

by the animus that was intended to cause an adverse employment action; and (2) the act was the proximate cause of the ultimate adverse employment action." *Id.*

This Circuit has consistently "held that the plaintiff must first establish a prima facie case of discrimination by showing, by a preponderance of evidence, that his protected status was a 'motivating factor' in the employer's adverse employment decision." *Gambrill v. Cullman County Bd. of Educ.*, 395 Fed. Appx. 543, 544 (11th Cir., Aug. 21, 2010). "A motivating factor does not mean that it had to be the sole cause of the employment action, but it has to be one of the factors that the employer 'relied on, took into account, considered, or conditioned its decision on that consideration.'" *Id.* After the plaintiff meets the initial burden, the burden shifts to the employer to prove, by a preponderance of evidence, the affirmative defense that "legitimate reasons, standing alone, would have induced the employer to take the same adverse action." *Id.*

**B.    § 4316(a) (Seniority Benefits) and § 4318(b)(3) (Pension Benefits)**

"A person who is reemployed under [USERRA] is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed." 38 U.S.C. §4316(a). If benefits are

7

seniority-based, the benefits accrue as though the employee was continuously employed. 20 C.F.R. §1002.210.

"[T]he employer must allocate the amount of its make-up contribution for the employee … in the same manner and to the same extent that it allocates the amount for other employees during the period of service." 20 C.F.R. §1002.261; 38 U.S.C. §4318(b)(1). The employee's pension contributions must be based on the compensation the employee would have reasonably received but for the period of military service. 38 U.S.C. §4318(b)(3).

### C.    § 4316(b) (Non-Seniority Based Benefits)

If benefits are non-seniority-based, employees on MLOA are entitled to the same benefits provided to other employees on a leave of absence pursuant to 38 U.S.C. §4316(b)(1)(B). "The Department of Labor's ('DOL') implementing regulation for §4316(b)(1) explains that the 'non-seniority rights and benefits to which an employee is entitled during a period of service are those that the employer provides to similarly situated employees by an employment contract, agreement, policy, practice, or plan in effect at the employee's workplace.'" *Clarkson*, 59 F.4th at 431 (citing 20 C.F.R. §1002.150). "The regulation then explains that if the benefits vary according to the type of leave, the employee must be given 'the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services.'" *Id.*

8

"Comparability is a question of fact." *Id.* at 434. "It is thus a question for the jury unless 'the facts of a case suggest that no reasonable jury could see enough commonality for a meaningful comparison.'" *Id.* (quoting *Rozumalski v. W.F. Baird & Assocs.*, Ltd., 937 F.3d 919, 927 (7th Cir. 2019))(holding that comparability in employment discrimination cases is a jury question); see also *Scanlan v. Am. Airlines Grp., Inc.*, 102 F.4th 164, 170 (3rd Cir., May 21, 2024) ("unless no reasonable jury could find the types of leave to be similar, the comparability question must go to a jury.")

## II.   Procedural Background

Four individual Plaintiffs, Jeremy Sorenson, Randal Reep, Randal Smith and Adam McLean, filed their original Class Action complaint on February 13, 2017 against Delta on behalf of themselves and a proposed class of pilots who are or were members of the United States Armed Services or National Guard and who took MLOA while employed by Delta. [Doc. 1.] The First Amended Complaint added Plaintiff James Doyle on March 10, 2017. [Doc. 12.] Delta's Motion to Dismiss filed on April 6, 2017, was denied on February 16, 2018. [Doc. 24.]

Following limited discovery, Plaintiffs filed the operative Second Amended Complaint on September 28, 2020 ("SAC"), which removed a claim for sick time accrual, and maintained claims that Delta violated USERRA by: (1) undercalculating pension contributions for pilots who took MLOA; (2)

undercalculating profit-sharing payments during MLOA; (3) restricting vacation accrual to the first 30 days of each MLOA; and (4) discriminating against pilots due to their military service, including through Delta's "Concurrent Duty" policy. [Doc. 84-Pgs 32-43.]

Plaintiffs alleged Delta's policies and practices relating to MLOA violated various sections of USERRA, including but not limited to Sections 4303, 4311, 4312, 4316 and 4318. [*Id.*-Pgs 4-9, 26-28.] Delta filed a Motion for Summary Judgment on March 14, 2022 ("MSJ"); and on March 31, 2023, the District Court issued its Order Granting Summary Judgment in favor of Delta and against the Military Pilots on all issues except Plaintiff Smith's "Five-Year Limit"/rehiring claim. [Doc. 227.]

Plaintiffs McLean and Doyle filed a Motion for Reconsideration of the Court's Order on April 28, 2023, related to Plaintiffs' "Discrimination Claims" specifically addressing the "Concurrent Duty" policy. [Doc. 228.] On July 24, 2023, the Court denied the motion. [Doc. 235.]

Plaintiffs McLean and Doyle filed a Notice of Appeal on August 8, 2023. [Doc. 236.]

A Stipulation of Dismissal with Prejudice of the Claims of Plaintiff Randal Smith was filed on August 30, 2023, following the settlement of Plaintiff Smith's individual claims against Delta. [Doc. 249.]

A final Judgment related to all claims, except Plaintiff Smith's dismissed discrimination claim, was filed on September 8, 2023. [Doc. 251.] Plaintiffs filed a related Notice of Appeal on October 6, 2023. [Doc. 252.]

On January 3, 2024, this Court found that it lacked jurisdiction of Plaintiffs' McLean and Doyle's appeals because Plaintiff Smith's claim was still pending before the District Court [Docs. 257, 258.]

On May 30, 2024, the District Court filed an Order Granting Plaintiff Smith's Motion for Voluntary Dismissal by Court Order Pursuant to Fed. R. Civ. P. 41(a)(2), leaving no remaining claims before the District Court. [Doc. 269.]

Plaintiffs McLean and Doyle timely filed this Notice of Appeal on June 11, 2024. [Doc. 270.]

**III.    The Summary Judgment Order**

The District Court issued an Order on March 31, 2023, Granting Delta's MSJ [Doc. 227] against Plaintiffs McLean and Doyle as to all Causes of Action which led to final Judgment against Plaintiffs in favor of Delta on the First (Pension Contributions), Second (Vacation Time Accrual) and Third (Profit Sharing) Causes of Action, and on Counts 1 (General Harassment) and 2 (Concurrent Duty) of the Fourth Cause of Action (Discrimination). [Docs. 84, 227, 235, 251.]

In the Order, the District Court ruled: 1) against Plaintiffs' claims of discrimination, including Count 2 based upon Delta's Concurrent Duty Policy [Doc.

227-Pgs 49-52]; 2) that "Plaintiffs' monthly pay is not 'reasonably certain' pursuant to USERRA" therefore Delta's methods for calculating pension contributions did not violate USERRA [*Id.*-Pgs 27, 30]; and 3) that MLOA is not a comparable leave of absence to other forms of leave taken by Delta's employees under 38 U.S.C. § 4316(b)(1)(B). [*Id.*-Pgs 37-38, FN19].

## A.    Order Regarding Plaintiff McLean's Discrimination Claims

In its Order, the Court found "that Defendant was, at minimum, concerned about Plaintiff [McLean's] availability to Defendant due to his military status." [*Id.*-Pg 50.]

However, the Court found that Delta carried its burden to prove "that legitimate reasons, standing alone, would have induced it to take the same adverse action" by presenting "McLean's own deposition testimony wherein he concedes that he violated Defendant's concurrent duty policy by performing military duties on days he was also working for Defendant." [*Id.*-Pgs 50-51.] The Court found that "McLean violated the concurrent duty policy on no fewer than sixty-nine (69) days during the period between January 1, 2013, and March 31, 2016;" "he performed military duty, including flying Air Force jets, while on paid sick leave with Defendant;" and "McLean performed military duty while on paid sick leave a minimum of thirty-one (31) days and that his 'misuse' of 'sick leave provide[d] an independent basis for termination' aside from his abuse of MLOA. [*Id.*-Pg 51.] The

12

Court held that "no genuine dispute of material fact remains with regard to Plaintiff McLean's discrimination claim, and the Court grants summary judgment in favor of Defendant as to the same." [*Id*.-Pg 52.]

### B.    Order Regarding Plaintiff Doyle's Discrimination Claims

In its Order, the Court found that "Plaintiff Doyle has offered evidence establishing the prima facie elements of his USERRA discrimination claim by a preponderance of the evidence." [*Id*.-Pg 46.] The Court went on to identify specific facts supporting this finding:

> Specifically, Plaintiff Doyle asserts that an April 28, 2015 email exchange between one of Defendant's supervisors, Mr. Barry Behnfeldt (who oversaw the MLOA process for at least some of Defendant's employees, including Plaintiff Doyle), and Defendant's regional director, Captain Phil Davis, shows that Defendant discriminated against him because of his military status. [See generally Doc. 197-16]. In that email exchange, Mr. Behnfeldt alerts Captain Davis that he "stumbled across" Plaintiff Doyle's pattern of taking a single MLOA day in a block of on-call days (or "reserve days") and that Plaintiff Doyle was "not being too kind to his primary employer." [See id.] Captain Davis responds: "Interesting that you raised this guy's schedule today. He hit my radar last week[;] . . . . [W]e [will] be visiting . . . him the next time he does the single MLOA day in the middle of a reserve days block. He has done it very blatantly over the last year." [See id.] The Court agrees with Plaintiff Doyle that this evidence is sufficient to establish a prima facie case of USERRA discrimination because a reasonable jury could use it to infer that Defendant pressured Plaintiff Doyle to resign from Defendant's employ because of Plaintiff Doyle's military status. [Doc. 227-Pgs 46-47.]

However, the Court went on to find "that Defendant carries its burden to demonstrate, by a preponderance of the evidence, that it possessed standalone,

legitimate reasons for the so-called 'pressure' it placed on Plaintiff Doyle that ultimately led to his resignation." [*Id*.-Pg 49.] The Court found that "[r]egardless of his military status, Plaintiff Doyle's admitted violations of Defendant's policies, disregard for Defendant's ability to schedule his leave (which no doubt impacted other employees), lack of productivity, and abuse or misuse of Defendant's leave systems all supported Defendant's investigation and that its actions were not motivated by animus against servicemembers." [*Id.*] The Court held that "[b]ecause there is no genuine dispute of material fact as to whether Defendant would be justified in pressuring Plaintiff Doyle to resign even absent his military status, the Court grants summary judgment in favor of Defendant on Plaintiff Doyle's discrimination claim." [*Id*.-Pgs 49-50.]

###    C.    Order Regarding Pension Contributions for Military Pilots

The first inquiry the Court addressed regarding Pension Contributions was "whether Plaintiffs' regular compensation was 'reasonably certain.'" [*Id*.-Pg 24.] The Court found that Defendant has demonstrated the absence of material fact on this issue and shown that Plaintiffs' monthly pay is not "reasonably certain." [*Id*.-Pg 27.] To reach this determination, the Court relied on Delta's expert's (Robert Speakman) opinion regarding the "standard deviation" of *only* the named Plaintiffs' pay hours in months where they took no formal MLOA, rather than the pay hours of pilots who had no military obligations. [*Id*.-Pgs 25-26.] The Court did not consider

that Military Duty was performed by each named Plaintiff in each month analyzed by Speakman; and the Court completely disregarded Plaintiffs' competing expert's (Candice Rosevear) opinion that Delta "has not established that pilot pay is 'uncertain;'" that Delta is incorrect with regard to "how to interpret and compare standard deviations, making all of his conclusions meaningless," and that "the Speakman Report presents invalid comparisons which lead to invalid conclusions." [Doc. 173-2-Pg 6, ¶13; Pg 8, ¶18, Pg 12, ¶30.]

The Court also found "the ALV method to be lawful pursuant to USERRA because it provided Plaintiffs with more pension contributions than they would have received pursuant to the plainly legal twelve (12)-month lookback method." [Doc. 227-Pg 30.] The Court granted summary judgment in Defendant's favor on Plaintiffs' first cause of action related to pension contributions. [*Id.*]

### D.    Order Regarding Vacation Time Accrual Policy for Military Pilots

The Court summarily rejected Plaintiffs' argument that SCML was comparable to MLOA, holding that this "theory is insufficient as a matter of law to sustain their vacation accrual claim" because it was raised for the first time in the Oppositions to the MSJ. [*Id*.-Pg 38, FN 19.] The Court also rejected Plaintiffs' contention that KLOA is a comparable form of leave to MLOA for purposes of their vacation accrual claim. [*Id*.-Pg 37.] Accordingly, the Court granted summary

judgment on Plaintiffs' second cause of action related to vacation time accrual. [*Id*.-Pg 38.]

## IV.    Statement of Facts

Delta's company culture of hostility against its Military Pilots is evidenced by a robust factual record establishing discrimination by Delta in treating its Military Pilots worse than other Delta pilots who are similarly situated:



(Email exchange circulated between Delta supervisors overseeing MLOA seeking to modify pilot behavior.) [Doc. 198-19].) In 2015, Captain Chris Frederick (Delta's then Regional Director and Chief Pilot in Atlanta) summarized Delta's culture of

severe and pervasive harassment toward its pilots with military responsibilities in an email exchange with Barry Behnfeldt (Delta's Flying Operations Special Assignment Supervisor in charge of overseeing MLOA), wherein he states:

> This is a case of the airlines subsidizing the military/government. Cooperation is one thing, but this has a direct impact on operations. It will make us start looking at whether to hire these guys or not to. Then, we show intent to be more discriminatory, they start leaving the reserve/guard in droves. Cause and effect. [Doc. 199-2–Pg 1].)

Delta's policies and practices are designed to discourage and reduce MLOA, to persuade pilots to resign from military service, and to underfund benefits for pilots who take MLOA. [Docs. 198-15, 198-17–Pg1.] This enables Delta to employ fewer pilots, to minimize its USERRA responsibilities, and to increase profits to the detriment of Plaintiffs and the Class. [Docs. 195-1–Pg 1, 195-8, 195-9, 195-11.]

## A.    Delta's Concurrent Duty Policy

At the heart of the discrimination in this case is Delta's Concurrent Duty Policy. In 2018, the District Court found that Moving Plaintiffs had alleged a plausible claim based on Delta's Concurrent Duty Policy because "pilots may not perform any military service on the same day that they have obligations to [Delta], but they may engage in any other activity." *Sorenson v. Delta Air Lines*, 2018 U.S. Dist. LEXIS 244076, *24 (emphasis included) [Doc. 24-Pg 21.]

From 2006 until 2016, Delta's Concurrent Duty Policy was listed in Delta's Flight Operations Manual ("FOM") as follows: "It is Delta's policy that a pilot

participating in active military duty is ineligible to perform Delta duties in any capacity." [Doc. 206-7–Pg 63.] Factual evidence showed that the policy was applied much more broadly than was written, such that military pilots were prevented from performing both military duty and working for Delta not just at the exact same moment in time they are flying Delta aircraft, but on the same calendar day, even when the two actions did not conflict or overlap during the same day. [Doc. 178-2-Pg 20.] In practice, and as used against the Plaintiffs, these restrictions prevented individuals from performing military duty during their own free time and/or on sick leave, when notice is not required to be given to the employer; and these restrictions only applied to those performing military work, and no other type of work or activity.

"Many Delta pilots have other careers," but this policy does not prohibit pilots from engaging in any activity other than performing military service obligations. [Docs. 206, 207-Pgs 22-23; Docs. 206-9, 207-9 – Pg 25; Docs. 206-21, 207-21 – Pg 2].) The Concurrent Duty Policy remained in place until March 2, 2023. [Docs. 228-1 – Pgs 3-4, 228-2 - Pg 11, §13(D).]

Although military servicemembers perform Military Duty while on formal MLOA (an actual leave taken when the employee needs to be absent from, or miss scheduled work with the civilian employer), Military Duty is often performed by military servicemembers without taking formal MLOA. The performance of some Military Duty can be accomplished on one's personal time (including by pilots on

layovers, after a Delta flight or before a Delta flight), that does not necessarily require an absence from employment with the civilian employer. However, Delta's Concurrent Duty Policy at issue here that was in place from 2006-2023 prohibited pilots from performing any Military Duty without taking formal MLOA from Delta.

Delta's management understood that "military pilots are being singled out for double-dipping where pilots with side-business (sic) are not." [Doc. 198-36.] "[A] pilot can have a business at home and get paid for that while sitting long call (or even short call), but a Military pilot cannot perform Military service while on long call without fearing for retribution if he is ever asked for orders." [*Id.*]

Similarly, if a pilot calls in sick from Delta such that the pilot can't fly, but can perform other activities, that pilot is not prevented from performing any other non-military activity while they are recovering on paid sick leave. But Delta's policy prevents that person from performing military duty, unless the pilot goes off of paid sick leave and on unpaid MLOA. [Doc. 201-Pgs 134:13-135:8, 136:18-137:2.][1] The pilot can work as a dentist on the same day he or she works for or is sick from Delta, but that same pilot cannot perform work as a military dentist. [*Id.*-Pgs 100:19-101:7; Doc. 197-Pgs 194:10-195:11; Doc. 195-Pgs 202:13-205:12.] A pilot can fly their own airplane, but they can't fly a military airplane. [Doc. 205-Pgs 63:19-21, p. 64:4-

---

[1] Pursuant to 11th Cir. R. 28-5, References to Depositions Transcripts are to the page number that appears in the header generated by the district court's electronic filing system.

13.] The pilot can even drink alcohol on the same day, but can't perform military duty. [Docs. 201-Pg 105:2-6; 206-7-Pg 75.]

### B.    Delta's Pension Contribution Practices for Military Pilots

Between January 1, 2005 and December 31, 2011, Delta used the average *pay* a pilot received in the previous 12-months to calculate pension contributions while on MLOA. [Docs. 206-3, 207-3.] Years ago, the pilot union ("ALPA") informed Delta that pilot earnings are "reasonably certain" and the look-back method to calculate deemed earnings violated USERRA. [Docs. 206-4, 207-4].) ALPA suggested using an average for monthly pay hours, along with actual hourly pay rates, with longevity and contractual pay raises, and hourly pay rate increases due to "position changes." [*Id.*-Pg 3.]

Delta changed its policy in 2012 after its "Labor Relations" department agreed with ALPA that Delta's then "current position" (i.e. the 12-month look back) was not USERRA compliant; and an average monthly pay hour value along with actual hourly pay rate increases, is "a fair estimation of the average pilot's earnings" which "should enhance our USERRA compliance." [Docs. 206-5, 207-5, Pgs 15, 35.] Delta agreed that pilot earnings *are* reasonably certain, but Delta did not retroactively correct prior pension underpayments. [Docs. 206-2, 207-2 at ¶10.]

Since 2012, Delta has utilized an artificially low average for pay hours in its calculations called Average Line Value ("ALV"). [Doc. 200-3.] Delta also uses

hourly Pay Rates that account for contractual pay increases, but does not use pay rate increases caused by seat movement.[2] [*Id.*]

ALV is "the number of hours established by [Delta] that is the projected average of all regular line values, for a position, for a bid period and is" between 71 and 85 pay hours per month. (Doc. 178-3-Pgs 13-14, §2(A)(29).)[3] "ALV changes month-to-month," and "is derived from the [future] bid award." [Doc. 200-Pg 31:13-21.] ALV is a forward-looking estimate and not a true reflection of the pay hours that pilots will receive.

Pilots also receive pay for time other than flying, such as vacation, sick time, jury duty, deadhead time, overtime or premium time, and time on call. [Doc. 200-Pgs 20:18-24, 26:5-16.] "[S]easonal variations in compensation" are to be included in earnings calculations in determining if compensation is reasonably certain; ALV exhibits strong seasonality that is depicted in Exhibit 1 of the Rosevear Expert Report. 20 C.F.R. §1002; [Doc. 173-1-Pg 12, ¶23; Doc. 200-2.]

---

[2] There is no dispute that Pay Rates are reasonably certain.

[3] Delta only provided sections of the most recent PWA. [Docs. 206-2 ¶12; 206-25.]



[Doc. 173-1-Pg 21.]

Through the Rosevear Expert Report, Plaintiffs presented material facts at the heart the "reasonable certainty" issue through a summary of Delta's voluminous pilot employee pay data as allowed by Federal Rule of Evidence 1006 ("[t]he proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court"). Fed. R. Evid. 1006.

ALV is an artificially low *average* because it uses pays hours that are planned versus pay hours actually earned by the overall pilot group, so using it undercalculates deemed earnings. Delta uses an hour average because it believes pilot pay is reasonably certain, and Plaintiffs argue that Delta must use a more

accurate average, like Average Pay Hours ("APH") which reflects the pay hours of pilots continuously employed, and not impacted by military leave. Since 2012, Delta has tracked APH for its pilots. [Docs. 206-2, 207-2 ¶14; Doc. 200-Pgs 40:12-49:9; Docs. 200-5, 200-6, 200-7.]

### C.    Delta's Vacation Time Accrual Policy for Military Pilots

Delta pilots do not accrue vacation if on MLOA in excess of 30 consecutive days. [Docs. 206-15, 207-15-Pg 5 §7.b.3.] At least two leaves offered to Delta pilots provide enhanced vacation accrual and are comparable to MLOA: Special Conflict Military Leave ("SCML") and Known Leave of Absence ("KLOA").

Since 2001, Delta has provided SCML benefits that allow the accrual of vacation for 60 consecutive days of MLOA. [Docs. 200-Pgs 84:8–86:19; 206-5-Pg 29; 206-17-Pg 3.]

During KLOA pilots remain on "active status" and continue to accrue vacation during the entire KLOA, which can last indefinitely. [Docs. 206-15, 207-15 Pg 5 §7(B)(3).]

### V.    Standard of Review

Federal appellate courts "review a grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *Yelling v. St. Vincent's Health Sys*., 82 F.4th 1329, 1311 (11th Cir., Oct. 5, 2023). "Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

"[P]laintiffs relying on circumstantial evidence can always survive summary judgment if 'circumstantial evidence raises a reasonable inference that the employer discriminated.'" *Id.* at 1342 (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). At the summary judgment stage, the district court's function is to determine whether there is a genuine issue for trial, not judge credibility, weigh the evidence, or resolve factual disputes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## SUMMARY OF ARGUMENT

### I.    Discrimination Cause of Action

The District Court erred in failing to address the illegality of Delta's Concurrent Duty Policy relied upon by Delta as the "standalone legitimate reason" to take adverse action against Plaintiffs. The District Court also erred in denying Plaintiffs' Motion for Reconsideration [Doc. 228] based upon newly discovered evidence and a need to correct a clear error of law or fact material to the Court's findings regarding Count 2 of Moving Plaintiffs' Discrimination cause of action alleging the illegality of Delta's discriminatory Concurrent Duty Policy.

## II.    Pension Contribution Cause of Action

The District Court erred when it looked only to Delta's flawed expert analysis, and failed to allow a jury to weigh the conflicting evidence to determine if pilot pay at Delta is "reasonably certain" for the purposes of calculating pension contributions for pilots on MLOA.

## III.    Vacation Time Accrual Cause of Action

The District Court erred when it rejected Plaintiffs' analysis of a comparable form of leave titled Special Conflict Military Leave ("SCML") finding that this was a new claim raised for the first time in opposition to the MSJ. The District Court also erred when it failed to allow a jury to determine what forms of leave at Delta are comparable to MLOA.

## ARGUMENT

## I.    The District Court Committed Reversible Error By Not Determining That The Concurrent Duty Policy Was Itself Discriminatory And Cannot Be Used As A Legitimate Basis To Justify Adverse Action

Delta had a discriminatory policy in place that unlawfully treated Military Pilots differently and less favorably than all other pilots, and then used violations of that unlawful and discriminatory policy as a basis to punish and terminate pilots. As the District Court previously found in 2018 at the Motion to Dismiss stage of this case, Plaintiffs alleged a plausible claim based on Delta's alleged discriminatory Concurrent Duty Policy whereby "pilots may not perform any military service on

the same day that they have obligations to [Delta], but they may engage in any other activity." [Doc. 24-Pg 21; Doc. 227.]

USERRA only requires an employee to provide verbal or written notice of military duty if the employee is absent, as in "the employee intends to leave the employment position to perform service in the uniformed services." 38 U.S.C. §4316(b); 20 C.F.R. §1002.85(a)(emphasis added); 38 U.S.C. §4312. If one can perform military duties on personal days, on personal time, or one can perform tasks such as telecommuting or administrative work from the comfort of one's own home or hotel room (i.e. while on call, layover or sick leave), one need not inform the employer nor request time off. And the timing of requesting formal MLOA only needs to be "reasonable under the circumstances," if an absence from the employer is required. 20 C.F.R. §1002.85(d).

A military service member can simultaneously "moonlight" at a civilian employer, and is not required to inform the civilian employer about military duty unless it causes the employee to be unavailable. *Drake v. Tucson, Inc*., 1010 WL 148212, at *1-3, 10-11 (D. Ariz. Jan 12, 2010). "From [the] military's perspective, if someone is on 120-day orders; when they have time not assigned to military duty, they may fly for their commercial carrier." [Doc. 196-2 -Pg 6.] The military does not limit pilots' ability to moonlight because guard and reserve pilots are needed to meet operational requirements. [*Id.*-Pg 2.]

Some of Delta's Chief Pilots and managers questioned the legality of the Concurrent Duty Policy and sought relief to allow pilots to perform military duty on their own time, including while on reserve and on layovers. [Doc. 198-34.] "This is a slippery slope we've gone down w/ our concurrent duty policy. I think the reasonable choice is to say [the pilot] should be able to perform military duty AFTER he has completed Delta duty." [Doc. 198-32-Pg 2.] "Webster's defines concurrent as 'happening at the same time'"… and "[i]t's not concurrent when [military duty is] done AFTER (or even before) a [Delta] duty period. Conflict is conflict, but after- or perhaps even before-is not a conflict." [*Id*.-Pg 1.] Delta Chief Pilots even admitted that they themselves performed concurrent duty, and performed military duty after they called in sick for Delta. [Doc. 202-Pgs 46:14-50:24.]

In the Summary Judgment Order, the District Court analyzed Plaintiffs' discrimination claims under Section 4311 of USERRA. [Doc. 227-Pgs 38-43.] This provision is violated by the employer "when an employee's membership or performance of service is a 'motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership . . . or service.'" [*Id*.-Pgs 38-39(quoting 38 U.S.C. § 4311(c)(1)).] As with the Title VII standard articulated by the U.S. Supreme Court in *Bostock*, the "motivating factor" standard is a "more forgiving standard" where "liability can sometimes follow even if sex [or military affiliation here] wasn't a but-for cause of

27

the employer's challenged decision." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739-1740 (June 15, 2020). "That 'lessened' showing is sufficient for a Title VII discrimination claim, which requires only a showing that race 'was a motivating factor for the defendant's adverse employment action,' even if some other (lawful) consideration would have led to the same outcome." *Yelling,* 82 F.4th at 1311. "In other words, the motivating-factor standard only asks whether 'illegal bias played a role' even if bias was not a necessary link in the causal chain. If it did, the claim can proceed." *Id.*

The District Court acknowledged that "[a] motivating factor does not have to be 'the sole cause of the employment action" but "[r]ather, 'it is [just] one of the factors that a truthful employer would list if asked for the reasons for its decision." [Doc. 227-Pg 39, citing *Annarumma*, 846 F. App'x at 782; see Doc. 228-1 – Pgs 5-8.] "A court can infer discriminatory motivation from a variety of considerations" including the "the temporal proximity between the employee's military activity and the adverse employment action," the "inconsistencies between the proffered reason for the employer's decision and other actions of the employer," and most importantly, the "disparate treatment of similarly situated employees." [Doc. 227-Pg 40, citing *Annarumma*, 846 F. App'x at 782 (citing *Coffman v. Chugach Support Serv., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005).]

"If an employee carries his burden to establish a prima facie USERRA discrimination claim, 'the burden shifts to the employer to prove, by a preponderance of the evidence, that legitimate reasons, standing alone, would have induced it to take the same adverse action." *Annarumma*, 846 F. App'x at 782 (citing *Coffman*, 411 F.3d at 1238-39); [*see* Doc 227-Pg 40].

"A Plaintiff may establish pretext indirectly by showing that an employer's proffered reason for its decision is unworthy of credence" which can be accomplished by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered reason so that a reasonable factfinder could conclude that it is unworthy of credit." *See Annarumma*, FN8, citing *Jackson v. State of Ala. Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005).

In order to show pretext, the plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision . . . . [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)[Doc. 228-1-Pg 7; *see also* Doc. 206-Pgs 14-16.] "[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons

29

for its decision are not believable." *Howard v. BP Oil Co*., 32 F.3d 520, 526 (11th Cir. 1994) (citing *St. Mary's Honor Crt. v. Hicks*, 509 U.S. 502 (1993)) *"*[E]vidence of intentional discrimination is all a plaintiff needs to defeat a motion for summary judgment." *Id*. at 525.

Plaintiffs met their burden at summary judgment when they introduced evidence that could form the basis for a finding of facts by a jury, taken in the light most favorable to Plaintiffs, that discredit defendant's proffered nondiscriminatory reasons for its actions. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1530, 1543 (11th Cir. 1997). Here, Plaintiffs provided a robust factual record establishing that Plaintiffs' respective status as military servicemembers was a motivating factor by Delta in adverse employment actions taken against them, including the termination of Doyle and McLean for violations of Delta's Concurrent Duty Policy due to their respective obligations to the military. [Docs. 206, 207-Pgs 3-4, 14-25.]

Delta's Concurrent Duty Policy was plainly discriminatory because it *only* prohibited employees from performing military service, but nothing else. [Docs. 206, 207-Pg. 20.] Factual evidence establishes that the policy was applied broadly such that military pilots were prevented from performing both military duty and working for Delta not just at the exact same moment in time they are flying Delta aircraft, but on the same calendar day, even when the two actions do not conflict or overlap during the same day. [Doc. 178-2-Pg 20.]

30

Delta's policies required pilots to notify Delta of all military duty, even if formal MLOA isn't required to accomplish the military duty, such as on days off from Delta, after the pilot is finished working for Delta on a given day, or before the pilot is scheduled to fly for Delta. [Doc. 199-20-Pgs 1, 7; Docs. 206, 207-Pg 21.] Non-military pilots are not required to report any other activity to Delta that occurs, like in the examples above, during their free or personal time. *Id*.

Throughout Delta's MSJ briefing, Delta continuously and intentionally confuses the performance of Military Duty (which is performing some type of work for the military which can be on one's personal and/or free time), and MLOA, which is the performance of military duty that conflicts with performing work at one's civilian employer and requires an absence from scheduled work from an employer. 20 C.F.R. §§1002.85(a), (c), (d); 32 C.F.R. §104.6(a)(2)(A)(2002)("advance notice of absence due to uniformed service.")[Doc. 223-1-Pg 5; Doc. 228-1-Pg 8.]

Delta falsely argued that USERRA requires it to have this policy and that USERRA has some sort of a "bright line requirement" that all military service, not just service requiring an actual absence, must be treated as a day of MLOA even if no actual conflict requiring an employee to be absent from scheduled work occurs. [Doc. 220-Pgs 6, 40-41.] These assertions were proven false when Delta eliminated the "Concurrent Duty" policy effective March 2, 2023. [Doc. 228-1-Pgs 3-4, 8-9.] In the Motion for Reconsideration, Plaintiffs introduce this recent change of policy

31

as newly discovered evidence showing that Delta now expressly allows Concurrent Duty, which proves that not only could Delta control the policy, but that it was (and is) feasible to allow military service members to perform military duty on the same day as Delta duty, there is no requirement for pilots to be on MLOA every time they perform military duty, and there is no requirement for pilots to take MLOA unless they need to be absent from actual work for their civilian employer. [Doc. 228-1 - Pgs 2-4, 8-11.]

The District Court erred by failing to find that the Concurrent Duty Policy treats military pilots differently and less favorably than all other pilots, was discriminatory, and was thus unlawful. The Court actually held that Delta's standalone reasons for the discipline and termination of Moving Plaintiffs were grounded in, and rested upon, their purported violations of Delta's Concurrent Duty Policy. The Court found "that legitimate reasons, standing alone, would have induced it to take the same adverse action" based on Plaintiffs' violations of Defendant's Concurrent Duty Policy by performing military duties on days when also working for Defendant. [Doc. 227-Pgs 50-51.] But the standalone reasons relied upon by the Court are themselves discriminatory and unlawful under USERRA, and cannot be used as pretext or justification for discipline or termination.

Without the Concurrent Duty policy in place, Delta would not have even begun its investigation of Plaintiffs, would not have been able to take adverse action

against Plaintiffs and would have found no standalone legitimate reasons to take adverse action against Plaintiffs.

### A.    Plaintiff McLean's Military Status was a Motivating Factor in his Termination

The District Court held that Delta properly took adverse action against McLean for violating "[Delta]'s concurrent duty policy by performing military duties on days he was also working for [Delta] . . ." and because "he performed military duty . . . while on paid sick leave with [Delta]." [Doc. 228-1- Pg 12; Doc. 227-Pgs 50-51.] The District Court incorrectly held that McLean's performance of military duty while on paid sick leave was a "misuse" of sick leave, and provided "'an independent basis for termination' aside from his abuse of" MLOA." [Doc. 227-Pg 51.]  Performing military duty while on paid sick leave at Delta is a violation of the discriminatory Concurrent Duty Policy because Delta doesn't prevent pilots from performing any other activity other than military duty while on paid sick leave. [Docs. 206-Pgs 23-24.] Delta may not have liked that McLean performed military duty while he was recovering from a hernia operation and was unable to fly for Delta, but Delta does not restrict pilots from performing any other activity other than military duty while on sick leave. [Doc. 228-1-Pg 14.]

The District Court also erred when it found that McLean "abuses or misuses" . . . "various leave systems," but the factual reality is that Delta investigated and then punished McLean solely because of his military leave status, and his performance of

military duty. [Doc. 206-Pgs 23-25, FN7.] Plaintiff McLean was only guilty of performing frequent military duty, which is protected by USERRA, and for violating Delta's unlawful Concurrent Duty Policy. [Doc. 228-1-Pg 15.]

But for McLean's military obligations, Delta would never have even begun an investigation of him. [Doc. 228-1-Pg 14; Doc. 206-Pg 24.] This confirms the clear discrimination against McLean based on his status as a military servicemember through Delta's prior Concurrent Duty policy. *Id*. In August 2016, Delta listed McLean as "Preparing for termination" due only to alleged "MLOA abuse, manipulation, [and] concurrent duty." [Doc. 194-6.] In this document Delta was acting as a "truthful employer" and listed both MLOA and concurrent duty as "motivating factors." *Thomas*, 71 F.4th at 1312. As a pretext, Delta later accused McLean of additional violations to attempt to avoid violating USERRA itself. [Doc. 206-Pgs 24, FN7; Doc. 228-1-Pg 13.] Delta suggests that Plaintiff McLean had separate and single days of military leave on his Delta schedule, but no verified military duty occurred. [Doc. 227-Pgs 51-52; Doc. 228-1-Pgs 13-14.] But, Delta had never even asked Plaintiff McLean for verification or correction of these dates, and although Plaintiff McLean has not specifically denied that these anomalies *may* have occurred, he did provide explanations and reasonable justification for these possible occurrences such as: there were a number of times military leave was posted but the orders were cancelled; in the military records, the "military duty may have been

logged on a different day"; orders "may very well have been amended to reflect that the order was changed after I posted military leave"; Plaintiff McLean often proactively adjusted military leave dates as orders changed, but there was no way to update changes or cancellations once military leave commenced. [Doc. 228-1 - Pgs 13-14; Doc. 206, FN 7, *citing* Doc. 171-Pgs 179:23-180:21, 226:17-228:11, 229:3-230:21; Doc. 171-14-Pg 5.]

A jury must be allowed to determine these factual disputes and determine if legitimate reasons, standing alone, would have induced Delta to take the same adverse actions against McLean.

### B.    Plaintiff Doyle's Military Status was a Motivating Factor in his Termination

Delta's investigation into Doyle's military service began in April 2015, and was initiated "because he took a 'single [military leave] day in the middle of a reserve days block." [Doc. 207-Pg 23, citing Doc. 197-16-Pg 1.] "Doyle's military status was [the] motivating factor in Delta's actions" and there was no independent basis for Delta to even commence an investigation of Plaintiff Doyle other than the fact that he frequently performed military service, which reduced his availability and thus his productivity to Delta.  [Doc. 207-Pgs10, 25, FN 3 citing Docs. 170-3; 170-14.] The months long investigation was only focused on the timing of Plaintiff Doyle's military duty and his violations of the Concurrent Duty Policy. [Doc. 207-

Pgs 23 (citing Doc. 198-21-Pgs 1-2), Pg 24 (citing Doc. 197-20); Docs. 197-17, 197-18.]

> "It really annoys me when a guy places MLOA to take himself out of the 3 day trip bucket!!! [Doyle] did it three months in a row. Also look at the timing of placing the MLOA on his RES on call days. As the squadron DO, I would almost bet that he is doing military duty on those one/two RES days between MLOA and violating our [concurrent duty] policy. I would maybe talk with Phil because we have talked about individuals in the past with this behavior. I think it may be time to call these guys out and ask them for a 'point credit summary' for the periods we're interested in. That report would show if they were performing duty in those periods, thereby violating our [concurrent duty] policy." [*Id*.; Doc. 198-21 -Pg 2.]

Delta's own internal records do not focus on any other potential policy violations other than Doyle's military duty all the way until August 2016: "[i]n August 2016, Delta [only] listed Doyle as 'Pending termination' due only to alleged "MLOA abuse." [Doc. 228-1-Pgs15-18; Doc. 207-Pg 25, *citing* Doc. 194-6.] In this moment of truthfulness, Delta listed its "motivating factors" to take action against Doyle as being solely related to his military service. *Thomas*, 71 F.4th at 1312.

In finding "standalone legitimate reasons" to justify Delta's termination of Doyle, the District Court only focused on Doyle's Concurrent Duty "violations" and his military service: 1) "performed . . . military duties while on call or [on the same day as he was] scheduled to work for" Delta; 2) "performed military duties while on paid sick leave" at Delta; and 3) "his lack of productivity" which was entirely due

to him performing protected military duty and MLOA. [Doc. 227-Pgs 47-49; Doc. 207-Pgs 10, 23, FN3; Doc. 228-1-Pgs 18-23.]

The District Court's comments regarding Doyle's "lack of productivity for the company" are shocking and clear error. [Doc. 227-Pg 49; Doc. 207-Pgs 10, 23, FN3; Doc. 228-1-Pgs 22-23.] Congress sought to protect reservists during their "frequent absences from work," but the District Court allowed Doyle's military obligations to be used as a reason to deny him USERRA protections. *Monroe*, 452 U.S. at 565; 38 U.S.C. §§4301(a); 4311. It was also clear error for the District Court to even suggest that Doyle had a "disregard for Defendant's ability to schedule his leave" because "[e]mployers are not permitted to deny military leave or pick the days of military service, and employees are 'not required to accommodate his or her employer's interests or concerns regarding the timing, frequency or duration of the uniformed service.'" 20 C.F.R. §1002.104.

Delta may have had "concerns about his 'sudden increase' in sick leave starting in 2012, [or] his use of sick leave in combination with paid vacation days or unpaid days off," but there is no evidence or even a specific allegation that Doyle ever called in sick from Delta when he was not actually sick. [Doc. 227-Pg 49; Doc. 207-Pg 24; Doc. 228-1-Pgs 22-23.] The District Court treated Delta's facts as undisputed, without any supporting facts or evidence of Doyle's use of sick leave and did not take into account Doyle's factual evidence or his deposition testimony.

[Doc. 170-12-Pg 1; Doc. 227-Pg 49; Doc. 228-1-Pgs 22-23.] When "[a]sked if [Doyle] had ever called-in sick when he wasn't actually sick [Doyle] answered in the negative." [Docs. 170-12; 228-1-Pg 22.]

Doyle never admitted to violating any company policy other than the unlawful Concurrent Duty policy, "Doyle was never out of position when Delta called [him to fly a trip], and Doyle never missed a Delta assignment when called, even if he was working on his military base." [Doc. 207-Pg 24: Doc. 170-Pgs 209:4-215:19.]

As a pretext Delta argued inadequate "notice" being provided to the Employer for the performance of Military Duty, but "USERRA only requires employees to provide verbal or written notice of their military duty if the employee is _absent_, as in 'the employee intends to _leave_ the employment position to perform service in the uniformed services.'" [Doc. 207-Pg 21]; 38 U.S.C. §4316(b); 20 C.F.R. § 1002.85(a)(emphasis added); 38 U.S.C. §4312.

Doyle provided examples of why, due to the nature of his military unit's mission, notice of military leave was very short, and unavoidable. [Doc 170-Pgs 140:2-22, 248:25-250:17, 318:9-17.] Doyle provided lengthy testimony as to how, due to the nature of the operations at his military unit, there were times he only learned of his need to perform Military Duty the morning prior, because "as you recall, we flew airplanes that came off of the maintenance line[] [a]nd oftentimes,

38

we would be notified perhaps the day prior that a certain airplane would be ready to go." [Doc. 228-1-Pg 21, *citing* Doc. 170- Pg 139:6-23.]

Doyle also explained that he didn't always need to take MLOA but was still able to perform Military Duty because "there were times where I went into the squadron, but I didn't have to post (military leave) on my Delta schedule because I could have left at any time.  I didn't need, quote, 'protection' from Delta at that time."  [*Id*.-Pg 320:3-8.]

The Concurrent Duty Policy was unlawful and discriminatory, and violations of that policy cannot be counted as standalone reasons to justify adverse action.  A jury must be allowed to determine if standalone legitimate reasons for taking adverse action against Doyle were merely a pretext designed to cover up Delta's USERRA violations.

C.    **The District Court Erred When It Denied Plaintiffs' Motion for Reconsideration Based Upon Newly Discovered Evidence Material To Count 2 Of Moving Plaintiffs' Discrimination Cause Of Action Alleging The Illegality of Delta's Discriminatory Concurrent Duty Policy**

Reconsideration is only "absolutely necessary" where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact. *Jersawitz v. People TV*, 71 F. Supp.2d 1330, 1344 (N.D. Ga. 1999); *Paper Recycling, Inc. v. Amoco Oil Co*., 856 F. Supp. 671, 678 (N.D. Ga. 1993). Plaintiffs filed a Motion for Reconsideration

[Docs. 228; 228-1; 228-2] based upon newly discovered evidence and a need to correct a clear error of law or fact material to this Court's findings regarding Count 2 of Moving Plaintiffs' Discrimination cause of action alleging the illegality of Delta's discriminatory "Concurrent Duty" policy.

The newly discovered evidence presented is Delta's new MLOA policy, which was signed into effect on March 2, 2023, expressly allowing Concurrent Duty (previously disallowed to Military Pilots) applicable within the new "Delta Pilot Working Agreement" entered into between Delta Air Lines, Inc. and The Air Line Pilots in the Service of Delta Airlines, Inc., as Represented by the Air Line Pilots Association, International. [*See* Doc. 228-2-Pg 11, §13(D)(4).] Under Rule 407 of the Federal Rules of Evidence, subsequent remedial measures may be admitted into evidence for the purpose of proving control or feasibility of precautionary measures. Fed. R. Evid. 407. Here, Delta's conduct in expressly allowing military servicemembers to perform Concurrent Duty in 2023 establishes that Delta could control the policy and that it was feasible to allow military servicemembers to perform Concurrent Duty during the prior time periods at issue in this case.

Delta's arguments in support of its MSJ were that it was not feasible to allow Concurrent Duty because Delta contended that USERRA required the prohibition on Concurrent Duty. [*See* Doc. 178-2-Pgs 22-23, FN 16; Doc. 220-Pgs 6, 40-41.] Delta specifically argued that it "is *required* by law to treat its pilots who are serving

40

in the military as if they are on leave and not working for Delta;" and that Delta has a "legal obligation to treat pilots as if they are on leave on days where they are performing service in the military." [Doc. 220-Pgs 40-41.] The new evidence that came into existence on March 2, 2023 establishes the falsity of Delta's control and feasibility argument as to the Concurrent Duty policy. The law and facts clearly establish that Delta's Concurrent Duty Policy, at issue in Count 2 of Moving Plaintiffs' Discrimination cause of action, is discriminatory, and cannot serve as a "standalone legitimate reason" or pretext for discipline and/or termination.

The 2023 PWA Concurrent Duty provision shows the feasibility of Delta to allow military servicemembers to perform concurrent duty, and directly refutes Delta's arguments that it was "required by law" and had a "legal obligation" under USERRA to prohibit concurrent duty. The new 2023 Concurrent Duty Policy clearly allows for the performance of military duty without taking formal MLOA while on paid Sick Leave. [*See* Doc. 228-2-Pg 11, §13(D)(4) ("Unless it makes the pilot unavailable for Company duty or violates USERRA, a pilot is not restricted from performing military duty while on a layover; while on a day of reserve; before, after or during a rotation; while on a day with an SLI duty period; while in training; or while on any other Company business.").] Therefore, the stated "standalone legitimate reason" for the discipline and termination of Plaintiffs would not violate current Delta policies now allowing for the same. The 2023 PWA language

41

specifically allows military servicemembers to perform concurrent duty and that the "pilot performing such concurrent military duty is not required to notify the Company." *Id*.

## II. The District Court Committed Reversible Error When It Failed To Take Into Account Evidence Provided by Plaintiffs When It Determined That Pilot Pay Was Not "Reasonably Certain" In Calculating Pension Contributions

The District Court held that employers are required "to calculate the appropriate pension contributions for a given employee who has taken MLOA so that the employee receives the same pension contributions as those employees *who did not take MLOA during the same time period*."  [Doc. 227-Pg 23 (emphasis added); *see* Docs. 178-2-Pgs 2–3; 206-Pg 6]; *see also* 38 U.S.C. § 4318.  Logically, these other employees would not be absent or on some other leave, would not have any military service obligations, and would be available for the full period. The employee's pension contributions must be based on the compensation the employee would have reasonably received but for the period of military service. 38 U.S.C. §4318(b)(3).

Section §4318 of USERRA, provides that the amount of funds an employer must contribute to an employee pension plan during the employee's "period of [military] service . . . shall be computed" either:

(A) at the rate the employee would have received but for the period of service . . . , or

(B) in the case that the determination of such rate is not reasonably certain, on the basis of the employee's average rate of compensation during the 12-month period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period).

38 U.S.C. § 4318(b)(3).

The district Court properly noted that the "'Parties' dispute here centers on the proper method for calculating the earnings Plaintiffs would have received from Defendant 'but for [their] MLOA.'" [Doc. 227-Pg 23; *see* Docs. 178-2-Pg 3; 206-Pg 6.] The District Court should have only looked as a comparator to the variability of pay hours of pilots with no military service obligations in the same month of the MLOA at issue to determine if pilot pay is reasonably certain. But instead of focusing on the variability of overall monthly pay hours for only those with no military service obligations, or even the entire pilot group, the District Court accepted Delta's argument as to the variability of the pay hours of only the five (5) named Plaintiffs in this case (who performed frequent and regular military duty, including periods of formal MLOA, in nearly every month of their employment at Delta). [Docs. 227-Pgs 24-26; 206-Pgs 10, FN 3; 207 Pgs 10, FN3; 208-Pgs 10-11; 209-Pgs 10-11; 210-Pgs 10-11; 223-1-Pgs 5-10.] Plaintiffs also fully explained certain other properly excluded comparator months, such as new hire "Entry level pilot" months, and the up to three-month period provided by USERRA to return to work, following MLOA. 20 C.F.R. § 1002.259(a); [Doc. 223-1-Pgs 7-9.]

Plaintiffs presented evidence that was obtained from and authenticated by Delta during discovery of the average pilot pay hours for all pilots, and in particular, pilots with no absences during specific months, but the District Court ignored this crucial evidence. Plaintiffs offered their own expert testimony finding that Delta's expert was "incorrect with regard to what the [evidence cited] says and how to interpret and compare standard deviations." [Docs. 206-4, 207-4-Pg 3; Docs 206-5, 207-5-Pgs 15, 35; Doc. 173-1 - Pg 12, ¶¶23-24; Doc. 173-2, Pgs. 7-15; Doc. 200-2.]

"Reasonable" does not mean "exact," and Plaintiffs introduced significant evidence that shows that Delta already assumes that pilot pay hours are reasonably certain by using Average Line Value ("ALV") which falls in a narrow band between 71 and 85 hours per month, which fluctuates and narrows further due to seasonal travel variations. [Docs. 206, 207-Pgs 8-10.] The District Court simply ignored all the facts presented by Plaintiffs, including Plaintiffs' expert's detailed analysis and conclusions contained the Expert Report. [Doc. 173-1, Doc. 173-2, Doc. 227-Pgs 24-27, Doc. 207-Pgs 8-11, FN3.]

Plaintiffs presented the October 8, 2021 Expert Report of Candice L. Rosevear wherein Ms. Rosevear (1) compared the average line value ("ALV"), the number of hours that is the projected average of all regular line values per month, which is then used to calculate deemed earnings for pilots on military leave, with the average actual number of pay hours ("APH") received by pilots who were paid at least 70

44

hours per month at the completion of each month, (2) calculated an expected pension contribution and expected profit sharing distribution based on average APH, and (3) calculated damages for the underpayment of pension contributions and profit-sharing distributions during the period April 1, 2007 to October 8, 2021. [Doc. 173-1.]

Plaintiffs contend that the average pay hours ("APH") of non-military pilots reflect reasonable certainty as to what a pilot without military obligation would have earned in a given month had that pilot been continuously employed without military obligations. Plaintiffs contend that APH takes into account compensation actually paid to pilots, including overtime/premium pay, sick pay, vacation, additional trips picked up by pilots on days off, weather events, or other operational events that increase pay, which are completely omitted by Delta's current methodology for calculations of pension and profit sharing at issue in this case. [Doc. 200-Pg 26:1-12; Doc. 200-3.] When placed on the same chart as ALV (which Delta utilizes in its current calculation methodologies), APH follows identical seasonality trends as ALV, but "APH is consistently greater than ALV" with an average differential across the entire Class Period of 14.01 hours per month. [Doc. 173-1- Pgs 12 ¶¶ 23-24, and p. 21.] Average APH is 90.47 hours and average ALV is 76.46 hours per month, consistently 14 hours higher than ALV. *Id*.

The District Court blindly accepted the analysis for the monthly pay hours of only five (5) pilots with regular military obligations to determine whether pilot pay without military obligations is reasonably certain, while disregarding the full data set of all Delta pilots without such military obligations.

Delta disputed the material fact presented to the Court by Plaintiffs that all five [named Plaintiffs] had MLOA and/or military duty throughout their employment, which caused their pay hours to vary significantly. [Doc. 224-Pg 9.] However, the evidence in the record firmly establishes that each named Plaintiff had MLOA and/or military duty throughout their employment. [Doc. 170-3; Doc. 170-14-Pgs 5-8; Docs. 171-1; 172-3; 175-7; Doc. 178-3-Pgs 45(§3(A)(5)), p. 56 (§ 3(D)), 156-157, 160, 165-168; Doc. 201-12; Doc. 174-8.] The facts are clear that Delta's analysis of the named Plaintiffs' monthly hours (and corresponding averages) were based on months that Plaintiffs performed Military Duty; and also, that Delta's analyses of the named Plaintiffs' monthly pay hour averages included months that had low pay hours based upon the USERRA protected 90-day delayed return period from MLOA following long term MLOA. *Id.*

 "Where two credible experts disagree, it is the job of the fact finder, not the trial court, to determine which source is more credible and reliable." *Clarkson*, 59 F.4th at 435 (quoting *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014)). The District Court committed reversible error when it weighed the

evidence, citing to Delta's expert alone while ignoring Plaintiffs' expert, to determine that pilot pay hours at Delta were not reasonably certain. The disputed material facts must be presented to a jury for determination.

### III. The District Court Committed Reversible Error by Failing to Allow A Jury Determine What Leaves Are Comparable to MLOA Relating to Their Vacation Accrual Claim

#### A. Plaintiffs' Argument Comparing MLOA with SCML is Not a New Claim

The District Court committed reversible error by holding that Plaintiffs' use of Special Conflict Military Leave ("SCML") as a comparable form of leave in their vacation accrual claim was a new claim. [Doc. 223-1-Pgs 10-14.]

Plaintiffs' Vacation Accrual Claim is not new and has been operative during the entire pendency of this action. [Doc. 223-1-Pg 11; Docs. 1, 84.] In the SAC, Plaintiffs allege that Delta "pilots on other forms of leave *including but not limited to* . . . Union Leave, vacations, sick leave, jury duty leave, Known Personal Leaves and certain personal leaves of absence, accrue vacation time during their leaves of absences that are longer than a bid month or greater than 30 consecutive days," but pilots on MLOA only accrue vacation for if they are absent up to 30 consecutive days. [Doc. 84, ¶¶126-134 (emphasis added); Doc. 227-Pgs 34-35.] The broad list of comparable leaves in the SAC were those known at the time of filing, before discovery was completed, and not intended to be limited to just those limited examples. [Doc. 84, ¶131.] Moreover, each form of leave listed is not an individual

cause of action; there is a single claim for discrimination relating to Vacation Time Accrual, with potentially multiple forms of comparable leaves providing superior benefits than pilots receive on MLOA for a jury to consider. [*Id.*; Doc. 220-Pg 28.]

**B.    A Jury Must be Allowed to Determine the Factual Issue of Whether MLOA is Comparable to Other Forms of Leave**

The District Court committed reversible error by failing to let a jury weigh the evidence and make a factual determination as to whether SCML and/or KLOA are comparable to MLOA under USERRA. [Doc. 223-1-Pgs 10-14.] Employees on MLOA are entitled to the same benefits provided to other employees on a leave of absence and if there are multiple types of leaves of absences available, "the employee must be given the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services." 38 U.S.C. § 4316(b)(1)(B); 20 C.F.R. § 1002.150(b); *Travers*, 8 F.4th at 202; see *Smith v Berryhill*, 139 S. Ct. 1765, 1774 (2019)("Congress' use of the word 'any' suggest an intent to use [the accompanying] term expansive[ly]." Duration and "other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered" for comparability. *Id.* Therefore, a 60-day, 90-day or 120-day MLOA would be comparable to any other type of leave of 60 days, 90 days or 120 days, or any other similar duration. *Rogers v. City of San Antonio*, 392 F.3d 758, 771-72 (5th Cir. 2004); see *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821, 825 (3d Cir. 1986); *Tully*, 481 F.3d 1369-71; see *Clarkson*,

48

59 F.4th at 43. But it's not necessary for all three factors to weigh heavily in a plaintiffs' favor, and it's acceptable to find a factor as only "minimally comparable." *Myrick*, 69 F.4th at 1319.

"[W]hen two plausible interpretations of USERRA exist – one denying benefits, the other protecting the veteran – we much choose the interpretation that protects the veteran." *Id.* at 1309.

### 1.    Comparability

"Comparability is a question of fact." *Syufy Enters. v. Am. Multicinema, Inc.*, 793 F.2d 990, 1003 (9th Cir. 1986). Comparability "is thus a question for the jury unless 'the facts of a case suggest that no reasonable jury could see enough commonality for a meaningful comparison.'" *Clarkson*, 59 F.4th at 434, citing *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 657 (7th Cir. 2021)(quoting *Rozumalski*, 937 F.3d 919, 927 (7th Cir. 2019))(holding that comparability in employment discrimination cases is a jury question).

Delta's position is that there are *no* comparable forms of leave to MLOA. [Doc. 178-2-Pgs 11-14; Doc. 227-Pg 35.] This position is wrong, illogical and would effectively eliminate this provision in USERRA. USERRA's provisions must be "construed in favor of the service member," not construed out of existence. *Travers*, 8 F.4th at 208, n.25.

### 2. Duration

Delta attacked comparability by analyzing the duration of all MLOA's at Delta to all sick leaves and jury duty. [Doc. 178-2-Pg 12.] This analysis was specifically rejected in *Clarkson*, which held that this approach would "render USERRA's protections meaningless" and the Circuit Court clarified that plaintiffs may define the claim by the particular length of the military leave at issue. *Clarkson*, 987 F.3d at 433-435; *White v. United Airlines, Inc*., 987 F.3d 616, 624 (7th Cir. 2021). In this case, the Plaintiffs are comparing MLOA of greater than 30 days with other forms of leave that are greater than 30 days. [Docs. 206, 207-Pg 12.]

### 3. Purpose

Delta argued that other leaves "have a different purpose than MLOAs," but relying on purpose, or requiring an identical purpose, will result in illogical outcomes, and improperly render nearly all forms of leave not comparable with MLOA. [Doc. 178-2-Pgs 12-14; Doc. 227-Pg 36.] Using Delta's analysis and focusing on factors that are unique to MLOA makes it virtually impossible for any leave to ever be comparable, depriving section 4316(b)(1) of any effect.

### 4. Ability to Choose

Delta argued that MLOA is not comparable to sick leave or jury duty because pilots have an "ability to schedule" MLOA. [Doc. 178-2-Pg 13.] However, "[t]hese comparability determinations are for the jury to make, not the court," as a Military

50

Pilot's ability to schedule MLOA depends on many factors, and are often out of the individual's control. *Clarkson*, 59 F.4th at 439.

Disputed facts exist regarding a pilot's ability to choose, as at times an individual can have a great deal of flexibility regarding the performance of military duty, and at other times the needs of the service are inflexible. [Doc. 206, FN7; Doc. 171-Pgs 176:20-180:21, 226:17-228:11; Doc. 171-14-Pg 5; Doc. 207-Pgs 24-25; Doc. 170-Pgs 209:4-215:19, 139:6-23, 140:2-22, 248:25-250:17; Doc. 228-1-Pgs 21-22.]

### C.    SCML is Comparable to MLOA

Section 4316(b) of USERRA does not limit comparable leaves to "Non-Military Leaves" as argued by Delta in the District Court. §4316(b)(1)(B) specifically provides that "a person who is absent from a position of employment by reason of service in the uniformed services shall be . . . . entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person **to employees having similar seniority, status, and pay who are on furlough or leave of absence** under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service." 38 U.S.C. §4316(b)(1)(B) (emphasis added). Similarly, 20 C.F.R. §1001.150(a) specifically provides that "[t]he non-seniority rights and benefits to which an employee is entitled during a period of service are those that

the employer provides to similarly situated employees by an employment contract, agreement, policy, practice, or plan in effect at the employee's workplace." 20 C.F.R. §1001.150(a). 20 C.F.R. §1001.150(b) states that "[i]f the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given the most favorable treatment accorded to *any* comparable leave when he or she performs service in the uniformed service." 20 C.F.R. §1001.150(b)(emphasis added).

Neither the plain language of USERRA nor the Federal Rules and Regulations limit comparable leaves to "non-military leaves." *Id*.; 38 U.S.C. §4316(b)(1)(B) Employees on SMCL are allowed vacation accrual for 60 consecutive days instead of just 30 and are clearly "employees having similar seniority, status, and pay" with employees on MLOA and who are on leave of absence with Delta. They may even be the same employee.

The proposition that Delta can provide some employee military members more preferential treatment with additional benefits is absurd and a slippery slope. Under Delta's logic, employers could provide benefits to Army members taking MLOA, but not to Navy members taking MLOA. The bottom line is that military members are entitled to equal treatment as their peers, including the same equal treatment as provided to other military members within the same company who are also taking MLOA.

Plaintiffs "may define the claim by the particular length of the military leave at issue," and here the claim is based on MLOA and SCML over 30 consecutive days in duration. *Clarkson*, 987 F.3d at 433; [Docs. 206, 207-Pgs 12-13.] The purpose of both MLOA and SCML is the service of military duty, which is identical in nature. [Docs. 206, 207-Pg 13.] Plaintiffs provided factual evidence that shows that MLOA and SCML are so comparable that even Delta groups these leaves together in their database, their spreadsheets and in their expert analysis. *Id*.

### D.    KLOA is Comparable to MLOA

During a KLOA pilots continue to accrue vacation with the typical KLOA being 30 days in length, but consecutive KLOA's can be 90 days or longer. [Doc. 206-Pgs 13-14; Doc. 207-Pg 13; Doc. 200-Pgs 91:13-92:20; Docs. 206-18, 207-18-Pg 2.]

Plaintiffs defined the duration for both MLOA and KLOA similarly as over 30 days. [Docs. 206, 207-Pg 13]. The general purpose of both MLOA and KLOA is to be absent from employment with Delta. *Id.* "KLOA is voluntary" in that the employee volunteers to take the leave, and the pilot therefore has choice into when or if a KLOA is taken. [Doc. 206-Pgs 12-13; Doc. 207-Pg 13.] Like MLOA, KLOA cannot be unilaterally revoked by Delta. *Id*. These facts and Delta's own arguments in the MSJ show that MLOA and KLOA can be voluntary in nature, and the

employee can have the ability to choose when to take either. [*Id*.; Doc. 178-2-Pgs 13-14]; *White*, 987 F.3d at 625.

Faced with the inability to address the glaring undisputed facts presented by Plaintiffs, or to acknowledge that Delta's material facts are disputed, Delta alleged a number of false allegations against Plaintiffs and their Counsel, and Delta presented two new legal arguments in its Reply Brief regarding Plaintiffs' vacation accrual claim, which the Plaintiffs never had the opportunity to address. [Doc. 223-1-Pgs 10-14; Doc. 220-Pgs 28-30.][4] Plaintiffs filed a Motion to file a Sur-Reply to address Delta's new allegations and arguments, which was denied. [Doc. 223-1.]

---

[4] Plaintiffs' counsel, Messrs. Stonebarger and Billy, diligently adhered to all rules of Federal Procedure, including the Local Rules of the District Court, to the best of their ability under all circumstances. In response to Delta's "undisputed facts," ("SOF") Plaintiffs either admitted facts as true, refuted Delta's facts by providing additional citations to evidence, properly objected to the admissibility of Delta's facts, or pointed out that Delta's cited facts are provided out of context and/or did not support Delta's asserted fact, or that Delta's fact is otherwise not material. [L.R. 56.1(B)(2)(a)(2); Doc. 220-Pgs 7-8.] Arguments were avoided when addressing the SOF, but explanations were provided as to why an "alleged fact" is disputed or inaccurate. Delta utilized 125 "facts," and Plaintiffs' counsel's diligence to the adherence of proper procedure can be easily observed. [Doc. 206-1.] For instance, Plaintiffs admitted SOF 1 and 3. In 8 other instances of alleging facts out of just the first 12, Delta introduced an incomplete or inaccurate definition for a term that is fully defined or has a very specific meaning in Delta's own documents or policy. Many of the facts are disputed in this case, and Mr. Billy's declaration [see Doc. 206-2] introduces documents into the record which were provided by Delta during discovery and authenticated.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request: 1) that the District Court's Judgment entered against Plaintiffs McLean and Doyle be Reversed; 2) that this Court rule that the Concurrent Duty policy is unlawful under USERRA; and 3) the remaining issues Remanded to proceed to trial.

Dated:  July 22, 2024

Respectfully submitted,

/s/*Gene J. Stonebarger*
GENE J. STONEBARGER
California Bar No. 209461

Stonebarger Law, APC
101 Parkshore Dr., Suite 100
Folsom, CA 95630
(916) 235-7140

CHARLES M. BILLY
California Bar No. 247046
The Law Offices Of
Charles M. Billy, P.C.
22706 Aspan St., Suite 305
Lake Forest, CA 92630
(949)357-9636

Stephen J. Anderson
Georgia Bar No. 018325
Kenneth S. Nugent, P.C.
4227 Pleasant Hill Road, Building 11
Duluth, Georgia 30096
(770) 820-0823

*Attorneys for Appellants*
*Adam McLean and James Doyle*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,551 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in Times New Roman 14-point type.

Dated:  July 22, 2024                      Respectfully submitted,

                                           /s/ *Gene J. Stonebarger*
                                           GENE J. STONEBARGER

## CERTIFICATE OF SERVICE

I certify that on July 22, 2024 I electronically filed the foregoing on the Clerk of the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system.  All participants are registered CM/ECF users and have been served by the CM/ECF system.

Respectfully submitted,

/s/ *Gene J. Stonebarger*
Gene J. Stonebarger
*Attorney for Appellants*
*Adam McLean and James Doyle*