# No. 24-11946

## In the United States Court of Appeals
## For the Eleventh Circuit

————————————————

ADAM MCLEAN, an individual,
JAMES DOYLE, an individual,
on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

versus

DELTA AIR LINES, INC.,

*Defendant-Appellee.*

————————————————

On Appeal from the United States District Court for the
Northern District of Georgia, No. 1:17-cv-00541-ELR

————————————————

## PLAINTIFFS'-APPELLANTS' PETITION FOR REHEARING EN BANC

————————————————

GENE J. STONEBARGER
California Bar No. 209461
Stonebarger Law, APC
101 Parkshore Dr., Ste. 100
Folsom, California 95630
(916) 235-7140

CHARLES M. BILLY
California Bar No. 247046
Law Offices of Charles M. Billy, APC
22706 Aspan St., Ste. 305
Lake Forest, California 92630
(949) 357-9636

STEPHEN J. ANDERSON
Georgia Bar No. 018325
Kenneth S. Nugent, P.C.
4227 Pleasant Hill Road, Building 11
Duluth, Georgia 30096
(770) 820-0823

May 6, 2026

# RULE 40-3(b) CERTIFICATE

I express a belief, based on a reasoned and studied professional judgment, that the Panel decision is contrary to the following decisions of the Supreme Court of the United States and the precedents of this Circuit and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this Court: *Staub v. Proctor Hospital*, 562 U.S. 411 (2011); *Coffman v. Chugach Support Services, Inc.*, 411 F.3d 1231 (11th Cir. 2005); *Thomas v. Broward Cnty. Sheriff's Office*, 71 F.4th 1305 (11th Cir., June 22, 2023); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam); *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276 (11th Cir. 2005); *Howard v. BP Oil Co.*, 32 F.3d 520 (11th Cir. 1994).

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance:

1.      Whether the judge-made "honest belief" doctrine developed under Title VII—which this Court invoked from *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354 (11th Cir. 1999), and *Flowers v. Troup County School District*, 803 F.3d 1327 (11th Cir. 2015)—may be engrafted onto the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311(c)(1), to relieve an employer of its statutory burden to *prove* that it "would have taken" the adverse action in the absence of the employee's military service.

2. Whether, under 38 U.S.C. § 4318(b)(3), an employer may disregard the "rate the employee would have received but for the period of service" whenever the employee's *actual* hours and therefore pay varied month-to-month (notwithstanding record evidence that the rate of compensation for similarly situated non-military employees is reasonably certain and that the employer itself uses an "Average Line Value" projection to forecast those same hours) thereby stripping pension protection from the large class of USERRA covered employees whose compensation contains any variable component.

3. Whether, under 38 U.S.C. § 4316(b)(1) and 20 C.F.R. § 1002.150, the "duration" factor may be applied categorically to defeat USERRA benefit-accrual claims whenever a servicemember's orders compel a long absence; an interpretation that denies USERRA's "rights and benefits" protections to the very servicemembers who most need them, and conflicts with the Ninth Circuit's decision in *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424 (9th Cir. 2023).

4. Whether the Panel violated controlling Supreme Court and 11th Circuit precedent in holding that Plaintiffs' reliance on Special Conflict Military Leave ("SCML") as a comparator constituted a new claim. Doc. 223-1 at 10-14; Panel Op. FN3. Delta had notice of the vacation accrual claim and that any comparable leave form could be invoked. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014) (per curiam); *Plumbers and*

*Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co., Inc.*, 932 F.2d 1443, 1448 (11th Cir. 1991); Appeal Doc. 18 at 59-60.

The Panel decision is published and will govern USERRA cases throughout this Circuit. Each of these questions is important not only to these two former military reservists, but to the hundreds of thousands of National Guard and Reserve servicemembers employed by private employers subject to USERRA.

Dated: May 6, 2026

/s/*Gene J. Stonebarger*
Gene J. Stonebarger
*Attorney for Appellants*
*Adam McLean and James Doyle*

# TABLE OF CONTENTS

RULE 40-3(B) CERTIFICATE ........................................................................i

TABLE OF CONTENTS ............................................................................iv

TABLE OF AUTHORITIES ..........................................................................v

ISSUES MERITING EN BANC CONSIDERATION.............................................1

COURSE OF PROCEEDINGS AND DISPOSITION..............................................2

STATEMENT OF FACTS MATERIAL TO THE PETITION ..............................3

    I.      Delta's Internal Hostility to Military Leave...........................................3

    II.     The Concurrent-Duty Policy and Its Application ................................4

    III.    The Pension Claim: Rosevear's Unrebutted Analysis .........................5

    IV.    The Vacation-Accrual Claim: Known-Leave Comparators..................6

ARGUMENT AND AUTHORITIES.....................................................................7

    I.      THE PANEL DECISION CONFLICTS WITH SUPREME COURT PRECEDENT, 11th CIRCUIT PRECEDENT, AND EVISCERATES USERRA'S STATUTORY "WOULD HAVE BEEN TAKEN" DEFENSE BY IMPORTING THE TITLE VII "HONEST BELIEF" DOCTRINE.....................................................7

    II.     THE PANEL'S RESTRICTIVE READING OF § 4318(b)(3) NULLIFIES USERRA'S PENSION PROTECTIONS FOR ANY EMPLOYEE WITH VARIABLE COMPENSATION.............12

    III.    THE PANEL'S § 4316(b) COMPARABILITY ANALYSIS CREATES A CATEGORICAL "LONG-TERM MILITARY LEAVE" EXCEPTION THAT CONFLICTS WITH USERRA AND INVERTS THE STATUTE'S PURPOSE ................................15

CONCLUSION ..........................................................................................18

CERTIFICATE OF COMPLIANCE ................................................................19

CERTIFICATE OF SERVICE .......................................................................20

# TABLE OF AUTHORITIES

## Cases

*Annarumma v. City of High Springs Fla.*,
846 Fed. Appx. 776 (2021). ...............................................................................8

*Arroyo v. Volvo Group North America, LLC*,
805 F.3d 278 (7th Cir. 2015) ...........................................................................11

*Clarkson v. Alaska Airlines, Inc.*,
59 F.4th 424 (9th Cir. 2023) ..................................................................... ii, 16

*Coffman v. Chugach Support Services, Inc.*,
411 F.3d 1231 (11th Cir. 2005) ........................................................... i, 7, 10, 12

*Coffy v. Republic Steel Corp.*,
447 U.S. 191 (1980).........................................................................................10

*Conley v. Gibson*,
355 U.S. 41 (1957)...........................................................................................16

*Damon v. Fleming Supermarkets of Florida, Inc.*,
196 F.3d 1354 (11th Cir. 1999) ......................................................................i, 9

*Fishgold v. Sullivan Drydock & Repair Corp.*,
328 U.S. 275 (1946).........................................................................................10

*Flowers v. Troup County School District*,
803 F.3d 1327 (11th Cir. 2015) ...........................................................................i

*Gilmour v. Gates, McDonald & Co.*,
382 F.3d 1312 (11th Cir. 2004) .......................................................................17

*Howard v. BP Oil Co.*,
32 F.3d 520 (11th Cir. 1994) ...............................................................................i

*Jackson v. State of Ala. Tenure Comm'n*,
405 F.3d 1276 (11th Cir. 2005) ...................................................................i, 8, 9

*Johnson v. City of Shelby*,
574 U.S. 10 (2014) (per curiam)......................................................... i, ii, 16, 17

*King v. St. Vincent's Hospital*,
502 U.S. 215 (1991) ................................................................10

*Mt. Healthy City School District Board of Education v. Doyle*,
429 U.S. 274 (1977) ................................................................10

*Plumbers and Steamfitters Local No. 150 Pension Fund v.
Vertex Constr. Co., Inc.*,
932 F.2d 1443 (11th Cir. 1991) ......................................ii-iii, 6, 16, 17

*Sams v. United Food & Comm'l Workers Int'l Union*,
866 F.2d 1380 (11th Cir. 1989) ...........................................17

*Sheehan v. Department of the Navy*,
240 F.3d 1009 (Fed. Cir. 2001) ...........................................11

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002)................................................ i, ii, 16, 17

*Staub v. Proctor Hospital*,
562 U.S. 411 (2011)...............................................................i, 10

*Tex. Dep't of Cmty. Affairs v. Burdine*,
450 U.S. 248 (1981)............................................................ 8-9

*Thomas v. Broward County Sheriff's Office*,
71 F.4th 1305 (11th Cir. 2023) .........................................i, 8

*Travers v. Federal Express Corp.*,
8 F.4th 198 (3d Cir. 2021) ...................................................11

*Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.*,
473 F.3d 11 (1st Cir. 2007)...................................................11

*White v. United Airlines, Inc.*,
987 F.3d 616 (7th Cir. 2021) ...............................................16

## Statutes and Regulations

Dole Act of 2025, Pub. L. No. 118-210, 138 Stat. 2797 (Jan. 2, 2025) ..................11

38 U.S.C. § 4311 ............................................................2, 6, 10

38 U.S.C. § 4311(b) .................................................................1

38 U.S.C. § 4311(c)(1)...................................................... i, ii, iii, 1, 2, 6-12, 14, 15, 18

38 U.S.C. § 4316 ..............................................................................6

38 U.S.C. § 4316(b) .................................................................2, 15, 17

38 U.S.C. § 4316(b)(1)................................................................ ii, 15

38 U.S.C. § 4316(b)(1)(B) ...............................................................15

38 U.S.C. § 4318 ..............................................................................6

38 U.S.C. § 4318(b)(3)........................................................... ii, 1, 2, 12

38 U.S.C. § 4318(b)(3)(A) .....................................................12, 13, 14

38 U.S.C. § 4318(b)(3)(B) ...........................................................12, 13

20 C.F.R. § 1002.7(a)......................................................................14

20 C.F.R. § 1002.150 ................................................................... ii, 1

20 C.F.R. § 1002.150(b) ..................................................................15

20 C.F.R. § 1002.267 .......................................................................14

## **Other Authorities**

11th Cir. R. 40...................................................................................2

Fed. R. App. P. 40 .............................................................................2

Fed. R. Civ. P. 8(a)..........................................................................16

H.R. Rep. No. 103-65, pt. 1 (1993)...................................................11

<u>**ISSUES MERITING EN BANC CONSIDERATION**</u>

1.      Whether the "honest belief" doctrine, developed in Title VII cases to insulate an employer that fires an employee based on a mistaken but sincerely held view that the employee violated a work rule, may be imported into USERRA to displace USERRA's express affirmative defense, which requires the employer to prove it "would have taken" the same action "in the absence of" the protected military service. 38 U.S.C. § 4311(c)(1).

2.      Whether, under 38 U.S.C. § 4318(b)(3), a pilot's rate of compensation is categorically "not reasonably certain," such that the employer may default to a twelve-month trailing average merely because the pilot's hours or pay varied, even when unrebutted expert testimony demonstrates that the rate of compensation for similarly situated non-military pilots is reasonably certain and the employer itself uses an formula to project those reasonably certain hours.

3.      Whether, under 38 U.S.C. § 4316(b) and 20 C.F.R. § 1002.150, the "duration" factor in the comparability inquiry may be given categorical weight sufficient to foreclose any finding that long-term military leave is "comparable" to any form of leave, with the result that the servicemembers who carry the longest deployments are denied USERRA's protection altogether.

4.      Whether the Panel violated controlling Supreme Court and 11th Circuit precedent in holding that Plaintiffs' reliance on Special Conflict Military Leave ("SCML") as a comparator constituted a new claim. Doc. 223-1 at 10-14; Panel Op. FN3.

## COURSE OF PROCEEDINGS AND DISPOSITION

Plaintiffs-Appellants filed this USERRA action in the Northern District of Georgia on February 13, 2017. Doc. 1. The operative complaint alleged that Delta (1) constructively discharged Plaintiffs because of their military service, in violation of § 4311; (2) systematically underfunded pension contributions for pilots on military leave, in violation of § 4318(b)(3); and (3) denied pilots on long-term military leave the vacation accrual that pilots on comparable leaves received, in violation of § 4316(b). Doc. 84.

After extensive discovery Delta moved for summary judgment, which Plaintiffs-Appellants opposed in individual filings. Docs. 178, 206, 207. The District Court granted summary judgment to Delta. Doc. 227.

On April 22, 2026, a Panel of this Court affirmed in a published opinion. Plaintiffs-Appellants timely file this Petition for Rehearing En Banc under Federal Rule of Appellate Procedure 40 and Eleventh Circuit Rule 40.

## STATEMENT OF FACTS MATERIAL TO THE PETITION

McLean and Doyle flew for Delta for nearly a decade while serving as officers in the United States Air Force Reserve. Panel Op. 3; Doc. 84 ¶¶ 71-72, 85-86. The record, viewed in Plaintiffs' favor, documents an internal culture treating military leave as a burden to be minimized.

## I. Delta's Internal Hostility to Military Leave.

Delta's Chief Pilot wrote "[t]his is a case of the airlines subsidizing the military/government," so Delta will "start looking at whether to hire [military] guys or not," and when "[Delta] show[s] intent to be more discriminatory, [pilots] start leaving the reserve/guard in droves. Cause and effect." Doc. 199–2 at 1. Delta's own managers described its treatment of military pilots as "boarders on harassment" and that military commitments "makes one think twice about hiring Res and Guard guys." Doc. 198-4 at 1, Doc. 199-2 at 2; Doc. 207. Delta was even accused of waging a "jihad" against pilots taking disfavored military leave of absences ("MLOA"). Doc. 207 at 18-19. Delta's management acknowledged in writing that its "concurrent duty policy," which the Panel acknowledged "prohibits a pilot from performing military duty while also being paid by Delta," was "a slippery slope" the company had "gone down," that the managers enforcing the policy had themselves "performed concurrent duty," and that Delta prohibits no other activities other than miliary duty. Panel Op. 10; Doc. 198–32; Doc. 198–34; 198-36 at 1; Doc. 202 at 46-51.

These remarks came from the same chain of command that made the termination decisions at issue. Delta's investigation documents initially only focused on Plaintiffs' military duty, then later added the alleged "sick-leave abuse." Doc. 194–6; Appeal Doc. 30 at 17-18, 24-27.

## II. The Concurrent-Duty Policy and Its Application.

Delta's "concurrent duty policy" applied only to pilots with military obligations. Appeal Doc. 30 at 15. The policy made no analogous demand on pilots engaged in second jobs, side businesses, or other personal pursuits during Delta-compensated periods, including while on sick leave, and Plaintiffs' showed that "double-dipping" at Delta was commonplace for non-military pilots, and was not disciplined. Doc. 198–36; Doc. 201 at 139.

"Delta pilots are entitled to use sick leave only when a personal medical condition, physical or mental, disables the pilot from performing duties as a flight crewmember." Panel Op. at 3. McLean was investigated because frequent military duty impacted his Delta availability, and following a hernia operation, McLean was unable to perform all the duties of a flight crewmember, but was well enough to perform other activities with certain physical limitations. Appeal Doc. 30 at 24-26.

Doyle's investigation was triggered because he performed single days of MLOA, not longer blocks. Doc. 197-16 at 1. Only much later did Delta find that one morning Doyle flew for the military, injured his knee, and then called in sick for

Delta that afternoon.  Panel Op. at 10; Appeal Doc. 30 at 17-18. Delta never actually accused Doyle of skiing while on sick leave, and Doyle never said or admitted he skied while on sick leave, but he did discuss that people recovering from illness are allowed to do other activities, including skiing, even though they're physically unable to perform other duties as a flight crewmember. Appeal Doc. 30 at 18; Appeal Doc 25.

**III.    The Pension Claim: Rosevear's Unrebutted Analysis.**

Delta's pension contributions for pilots on MLOA rested on "Average Line Value" ("ALV") projections that Delta itself generated to forecast "the average number of hours that the pilot would work if he were not on leave," and was used by Delta for a variety of functions. Panel Op. 3; Doc. 200–3; Doc. 178-3 at 13-14; Doc. 200 at 31.

Plaintiffs' expert Candice L. Rosevear analyzed Delta's ALV projections against the "Average Pay Hours" ("APH") non-military pilots actually received during the class period. Doc. 173–1 ¶¶23–24. Her unrebutted findings established that non-military pilots' APH was reasonably certain, exhibited "strong seasonality," and exceeded ALV by an average of 14.01 hours per month. Doc. 173–1 ¶23, pp. 21-23; Doc. 173–2 ¶¶7, 13, 18, 30. Rosevear concluded that Delta's reliance on a trailing twelve-month average systematically underpaid pension contributions. Doc. 173–2 ¶13; Doc. 173–1 at 20.

## IV.  The Vacation-Accrual Claim: Known-Leave Comparators.

Delta's Pilot Working Agreement ("PWA") recognized multiple forms of paid and unpaid leaves of absence, several of which, including "Known Leave of Absence" ("KLOA") and "Special Conflict Military Leave" ("SCML"), were comparable in operation to long-term MLOA. Doc. 206–16. Under KLOA and SCML, a pilot continued to accrue certain benefits, but the same was not true for pilots on MLOA. Doc. 206–5 at 25-31. The record established that KLOAs could extend for months and pilots took sequential KLOAs that approximated long-term absences. Doc. 200 at 91-92. Delta's "known" leaves were not, as the Panel's analysis presumed, necessarily short or one-month affairs. Panel Op. 16.

The Panel also violated 11th Circuit precedent in holding that Plaintiffs' comparison using SCML constituted a new claim, even though Delta was on notice there was a single vacation accrual claim, but there were potentially many comparable forms of leave that could be invoked. Doc. 223-1 at 10-14; Panel Op. FN3. *Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co., Inc.*, 932 F.2d 1443, 1448 (11th Cir. 1991); Appeal Doc. 18 at 59-60.

It is against this record that Plaintiffs petition for rehearing en banc. The Panel's holdings on §§ 4311, 4316, and 4318 reach far beyond this case and conflict with USERRA's text, with Supreme Court and Circuit precedent, and with Congress's 2025 Dole Act reaffirmation of USERRA.

**ARGUMENT AND AUTHORITIES**

I.    **THE PANEL DECISION CONFLICTS WITH SUPREME COURT PRECEDENT, 11th CIRCUIT PRECEDENT, AND EVISCERATES USERRA'S STATUTORY "WOULD HAVE BEEN TAKEN" DEFENSE BY IMPORTING THE TITLE VII "HONEST BELIEF" DOCTRINE.**

USERRA does not contain an "honest belief" defense, and this Circuit has never before used it in USERRA cases. The statute instead imposes a rigid two-part causation standard. Liability attaches if the employee's "membership … in the uniformed services is a motivating factor in the employer's action." 38 U.S.C. § 4311(c)(1). An employer may then avoid liability only if it can "prove that the action would have been taken in the absence of" the protected service. *Id.* That affirmative defense is a counterfactual causation inquiry, not a subjective-belief inquiry.

This Court has previously recognized as much. In *Coffman v. Chugach Support Services, Inc.*, 411 F.3d 1231, 1238–39 (11th Cir. 2005), this Court described the § 4311(c)(1) burden as requiring "undisputed evidence" that "legitimate reasons, *standing alone*, would have induced the employer to take the same adverse action." (emphasis added). The "standing alone" requirement is not a mere verbal formula. It captures the statute's demand that the protected status be severed from the causal analysis and that the employer prove, on the record, the action would have followed even without it.

7

"An employee proves a violation [of USERRA] by establishing that his 'service . . . [was] a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such . . . service.'" *Thomas v. Broward Cnty. Sheriff's Office*, 71 F.4th 1305, 1312 (11th Cir., June 22, 2023)(citing §4311(c)(1)). "A person's military service is a motivating factor if 'it is one of the factors that a truthful employer would list if asked for the reasons for its decision." *Id.* "A wide range of evidence may prove that an employee's military status was a motivating factor in his termination, including 'an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity' and 'inconsistencies between the proffered reason and other actions of the employer.'" *Id.* (internal citations omitted).

"A Plaintiff may establish pretext indirectly by showing that an employer's proffered reason for its decision is unworthy of credence" by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered reason so that a reasonable factfinder could conclude that it is unworthy of credit." *Annarumma v. City of High Springs Fla.,* 846 Fed. Appx. 776, 782, fn8 (2021), citing *Jackson v. State of Ala. Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). To show pretext, plaintiff "demonstrate[s] that the proffered reason was not the true reason for the employment decision." *Tex. Dep't of Cmty. Affairs v.*

*Burdine*, 450 U.S. 248, 256 (1981); Doc. 228-1-Pg 7. "A plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Jackson v. State of Ala. Tenure Comm'n,* 405 F.3d at 1289.

Plaintiffs' record establishes that military status was a motivating factor in the termination decisions, and other alleged violations of policy were a pretext. Docs. 206, 207 at 3-4, 14-25. Delta initiated its investigations because Plaintiffs were on military leave, a step the Panel's analysis ignores. Panel Op. 9-10.

The Panel's reliance on the Title VII "honest belief" line of cases (*Damon*, 196 F.3d at 1363 n.3, and *Flowers*, 803 F.3d at 1338) collapses the counterfactual inquiry into a deferential review of the employer's subjective state of mind. *See* Panel Op. 11–12 (holding that "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct"). Those decisions arose under Title VII, a different statute with a different burden-shifting framework. Neither mentions USERRA or confronts § 4311(c)(1)'s text.

The record here illustrates precisely why the Panel's rule is inconsistent with the statute. Delta's termination worksheet for McLean identified "MLOA abuse, manipulation, concurrent duty" as the grounds for termination, but nothing else, and does not mention sick leave. Doc. 194–6. Doyle's termination worksheet only

mentions "MLOA abuse." *Id*. Delta "was acting as a truthful employer" when it listed MLOA as a reason for termination. Doc. 194–6 at 1.

Delta's internal communications, illustrated above, reflect company-wide hostility against military service. That record creates a genuine dispute whether "legitimate reasons, standing alone," would have caused Delta to discharge McLean and Doyle in the absence of military service. *Coffman*, 411 F.3d at 1239. The Panel avoided that question by treating Delta's subjective "belief" in sick-leave abuse as case-dispositive; even though the very document recording that belief expressly referenced Plaintiffs' MLOA, but did not even mention sick leave. Doc. 194–6.

USERRA's causation standard derives from the National Labor Relations Act framework articulated in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977), not from the Title VII "mixed motive" framework. See *Staub v. Proctor Hospital*, 562 U.S. 411, 417–20 (2011) (analyzing § 4311 under the *Mt. Healthy* but-for framework and recognizing USERRA's distinct "motivating factor" standard). And the Supreme Court has instructed that USERRA, as a veterans' protective statute, "is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946); see also *King v. St. Vincent's Hospital*, 502 U.S. 215, 220 n.9 (1991)(applying that canon); *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980)(same).

The Federal Circuit holds that the employer's § 4311(c)(1) burden is "the burden of persuasion" on the causation question; not a burden merely of articulating a subjectively honest reason. *Sheehan v. Department of the Navy*, 240 F.3d 1009, 1013–14 (Fed. Cir. 2001). The First Circuit followed suit. *Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 17 (1st Cir. 2007). The Third Circuit agrees. *Travers v. Federal Express Corp.*, 8 F.4th 198, 208–10 (3d Cir. 2021). And the Seventh Circuit has expressly held that USERRA's framework is "more protective" than Title VII's and forbids Courts from borrowing Title VII's pretext structure. *Arroyo v. Volvo Group North America, LLC*, 805 F.3d 278, 285 (7th Cir. 2015).

Congress enacted USERRA to strengthen reemployment and benefits protections for servicemembers, H.R. Rep. No. 103-65, pt. 1, at 18–19 (1993), and recently reaffirmed that purpose in the 2025 Dole Act. Pub. L. No. 118-210, 138 Stat. 2797.

The Panel's ruling thus conflicts with the protective purpose of USERRA, Supreme Court precedent, four sister Circuits, and this Court's own decisions. It creates a rule under which any employer offering a plausible (even if incorrect) work-rule explanation escapes USERRA liability. That rule is particularly consequential in cases like this one, where the asserted "independent" ground for termination is itself entangled with military service. The Panel acknowledged that

11

the "concurrent duty policy," violations of which Delta cited in its termination notice, "prohibits a pilot from performing military duty while also being paid by Delta." Panel Op. 10. A policy that applies only to pilots performing military duty cannot, without more, provide a reason "standing alone" to discharge a pilot with military service obligations. *Coffman*, 411 F.3d at 1239. Delta's 2023 successor policy now affirmatively permits the concurrent-duty activity Delta cited to discharge McLean. Doc. 228-2 at 11.

This question alone warrants en banc review. It affects every USERRA discrimination case in this Circuit, and because USERRA cases are overwhelmingly resolved at summary judgment, the § 4311(c)(1) standard is outcome-determinative.

## II. THE PANEL'S RESTRICTIVE READING OF § 4318(b)(3) NULLIFIES USERRA'S PENSION PROTECTIONS FOR ANY EMPLOYEE WITH VARIABLE COMPENSATION.

Section 4318(b)(3) establishes a two-step hierarchy for computing pension contributions during periods of military leave. The default rule is that the employer must contribute "at the rate the employee would have received but for the period of service." 38 U.S.C. § 4318(b)(3)(A). Only if "the determination of such rate is not reasonably certain" may the employer fall back on "the employee's average rate of compensation during the 12-month period immediately preceding the period of service." *Id.* § 4318(b)(3)(B). The default is the counterfactual rate.

The Panel inverted that hierarchy, holding that "reasonably certain" is determined by reference to the individual employee's actual month-to-month variance in hours. Panel Op. 13–14. On that view, any employee whose hours, overtime, or commissions vary at all is automatically relegated to § 4318(b)(3)(B), reading the default counterfactual provision out of the statute.

Section 4318(b)(3)(A) asks what the employee "would have received but for" the service period; which is a predictive question, since no actual figure exists for someone not working. Courts regularly answer predictive questions through statistical comparators, collective-bargaining-agreement formula, and the employer's own projection tools. Delta itself used such a tool (ALV) which the Panel acknowledged "project[ed] the average number of hours that the pilot would work if he were not on leave." Panel Op. 3; Doc. 200–3. The very existence of that formula demonstrates that the "rate the employee would have received but for" military service was, in fact, reasonably certain. Delta deployed the same ALV projection for scheduling, budgeting, and operational planning. Doc. 178-3 at 13-14; Doc. 200 at 31. ALV cannot be "reasonably certain" for every other corporate purpose yet "not reasonably certain" for paying servicemembers' pensions.

Rosevear's unrebutted analysis established that non-military pilots' APH exceeded Delta's ALV projection by an average of 14.01 hours per month, with predictable seasonality. Doc. 173–1 at 12 ¶¶23–24; Doc. 200–2; Doc. 207–5 at 15,

13

35. That differential represents a systematic underpayment of USERRA pension contributions. Doc. 173–1 at 21; Doc. 173–2 at 5-6 ¶¶ 10-13. The Panel's treatment of that unrebutted expert testimony as "immaterial," Panel Op. 13–14, is not a narrow or fact-bound ruling. It is a categorical holding that comparator evidence can never suffice to establish reasonable certainty so long as the individual employee's hours varied. That holding functionally rewrites § 4318(b)(3)(A) to require individualized certainty that no employee with any variable component of compensation can ever supply. Compensation can be both variable and reasonably certain.

The Panel's construction also conflicts with 20 C.F.R. § 1002.267, USERRA's floor-not-ceiling rule, 20 C.F.R. § 1002.7(a), and creates a perverse incentive: any employer adopting a variable-hours model can categorically escape USERRA's higher pension contribution requirements.

The Panel's holding will reach every workforce in this Circuit with variable hours or commissions. The Court should grant en banc review to resolve the proper method of computing "the rate the employee would have received but for the period of service" when compensation varies.

## III. THE PANEL'S § 4316(b) COMPARABILITY ANALYSIS CREATES A CATEGORICAL "LONG-TERM MILITARY LEAVE" EXCEPTION THAT CONFLICTS WITH USERRA AND INVERTS THE STATUTE'S PURPOSE.

Section 4316(b)(1) entitles servicemembers on MLOA to the same "rights and benefits" as employees on "furlough or leave of absence" of a comparable type. 38 U.S.C. § 4316(b)(1)(B). Three possible comparability factors are duration, purpose, and employee choice. 20 C.F.R. §1002.150(b).

The Panel's application of those factors inverts the statute. On duration: KLOA is offered "one month at a time," (but may extend beyond a single month and be taken sequentially. Doc. 200 at 91-92) while MLOA lasts "a long time—even years." Panel Op. 16. On purpose: KLOA is offered when Delta is "overstaffed," while MLOA "allows a pilot to perform military service." Panel Op. 17. On choice: pilots "decide for themselves" whether to accept KLOA, while military pilots "must take leave when they are ordered." Panel Op. 17. Each of those propositions is contradicted by, or materially oversimplifies, the record.

Applied categorically, these observations mean long-term MLOA can never be comparable to any other leave, because every long-term MLOA is, by definition, long, government-compelled, and for military service. The Panel's reasoning thus converts the three-factor test into a blanket exclusion rule, granting USERRA's protections to servicemembers with the shortest duty while denying them to those with the longest deployments. That cannot be what Congress enacted.

15

In *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424 (9th Cir. 2023), the Ninth Circuit held that comparability is a factual question for the jury and no single factor, including duration, may be given dispositive weight. *Id.* at 434. The Panel cites *Clarkson* but departs from its framework by elevating duration into an effective presumption. The Seventh Circuit in *White v. United Airlines, Inc.*, 987 F.3d 616, 625 (7th Cir. 2021), treats the factors as a balancing inquiry, not a serial veto.

The Panel also erred in holding that Plaintiffs' reliance on Special Conflict Military Leave ("SCML") as a comparator constituted a new claim. Doc. 223-1 at 10-14; Panel Op. FN3. Delta had notice of the vacation accrual claim and that any comparable leave form could be invoked. *Plumbers*, 932 F.2d at 1448; Appeal Doc. 18 at 59-60.

That holding is irreconcilable with controlling Supreme Court precedent. Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim" that "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). Discrimination plaintiffs in particular need not plead "specific facts establishing a prima facie case" or every comparator on which they may later

rely. *Swierkiewicz*, 534 U.S. at 510–12. This Court applies the same notice-pleading rule. *Plumbers*, 932 F.2d at 1448 (quoting *Sams v. United Food & Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989)). Plaintiffs pleaded a single § 4316(b) claim and identified comparable Delta leaves as the basis for liability. Appeal Doc. 18 at 59-60. SCML is not a new claim or legal theory; it is evidence of an additional Delta-recognized comparator under which pilots continued to accrue benefits. Treating SCML as a "new claim" converts the § 4316(b) inquiry into the kind of "punctiliously stated theory of the pleadings" the Supreme Court has rejected. *Johnson*, 574 U.S. at 12. Delta had sufficient notice that any comparable leave form—civilian or military—could be invoked to establish the § 4316(b) violation.

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir. 2004) is not to the contrary. *Gilmour* involved a plaintiff who pleaded common-law tort claims and, at summary judgment, attempted to assert a freestanding contract claim, an independent cause of action with distinct elements. *Id.* at 1314-1315. SCML is no such thing. Whether KLOA, SCML or another Delta-recognized form of leave best satisfies § 4316(b) comparability is a question of evidence supporting the single claim Plaintiffs pleaded—not the assertion of a new cause of action.

The en banc Court should clarify that §4316(b) comparability is a holistic, fact-dependent inquiry to be determined by a jury, that no single factor may be

applied so as to foreclose USERRA protection for the longest-serving military employees, and that using SCML as a comparator leave was not a new claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs-Appellants respectfully request that the Court grant rehearing en banc, vacate the Panel opinion, and remand this case for further proceedings.

Dated: May 6, 2026

Respectfully submitted,

/s/*Gene J. Stonebarger*
GENE J. STONEBARGER
California Bar No. 209461

Stonebarger Law, APC
101 Parkshore Dr., Suite 100
Folsom, CA 95630
(916) 235-7140

CHARLES M. BILLY
California Bar No. 247046
The Law Offices Of
Charles M. Billy, P.C.
22706 Aspan St., Suite 305
Lake Forest, CA 92630
(949) 357-9636

Stephen J. Anderson
Georgia Bar No. 018325
Kenneth S. Nugent, P.C.
4227 Pleasant Hill Road, Building 11
Duluth, Georgia 30096
(770) 820-0823

*Attorneys for Appellants*
*Adam McLean and James Doyle*

# CERTIFICATE OF COMPLIANCE

1.     This petition complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3) because, excluding the parts of the document exempted by Rule 32(f), it contains 3,883 words.

2.     This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: May 6, 2026

/s/*Gene J. Stonebarger*
Gene J. Stonebarger
*Attorney for Appellants*
*Adam McLean and James Doyle*

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2026, I electronically filed the foregoing Petition for Rehearing En Banc with the Clerk of the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: May 6, 2026

/s/*Gene J. Stonebarger*
Gene J. Stonebarger
*Attorney for Appellants*
*Adam McLean and James Doyle*